No. 23-1375

_____

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

     *Plaintiff-Appellee*,

  v.

JAMES ANDERSON,

     *Defendant-Appellant*.

_____

On Appeal from the United States District Court
for the Western District of Wisconsin,
Case No. 3:09-CR-152-wmc
The Honorable William M. Conley, Presiding

_____

**OPENING BRIEF AND SHORT APPENDIX OF
DEFENDANT-APPELLANT JAMES ANDERSON**

_____

Jessica Arden Ettinger
FEDERAL DEFENDER SERVICES
   OF WISCONSIN, INC.
22 East Mifflin Street, Suite 1000
Madison, WI 53703
(608) 260-9900
jessica_ettinger@fd.org

*Counsel for James Anderson*

**DISCLOSURE STATEMENT**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, undersigned counsel informs the Court that Federal Defender Services of Wisconsin, Inc., by Joseph Bugni and Jonathan Greenberg, represented defendant-appellant James Anderson, who is a natural person, in the District Court for the Western District of Wisconsin before the Honorable William M. Conley, District Judge. Federal Defender Services of Wisconsin, Inc., by Jessica Arden Ettinger, represents Anderson before this Court.

June 5, 2023

*/s/ Jessica Arden Ettinger*
Jessica Arden Ettinger

*Counsel for James Anderson*

# TABLE OF CONTENTS

Page

DISCLOSURE STATEMENT....................................................................................i

TABLE OF AUTHORITIES................................................................................. iii

JURISDICTIONAL STATEMENT ........................................................................1

ISSUE PRESENTED ...............................................................................................2

STATEMENT OF THE CASE................................................................................3

        A.     James Anderson pleaded guilty to possessing child pornogra-
phy, and a psychologist determined that he is a strong candi-
date for treatment..............................................................................3

        B.     Anderson's treatment was interrupted when he relapsed dur-
ing the pandemic, the court revoked his supervision, and he
was re-incarcerated..............................................................................3

        C.     Deprived of therapy for more than a year, Anderson relapsed
a second time; again, he was revoked and incarcerated. .................5

SUMMARY OF THE ARGUMENT .......................................................................9

ARGUMENT...........................................................................................................10

I.     The district court erred when it failed to explain why each term of
Anderson's sentence was sufficient but not greater than necessary. ......................10

II.    The district court erred when it did not give open-minded consider-
ation to the defense's argument that Anderson's addiction warrants
a shorter sentence.............................................................................................14

CONCLUSION ......................................................................................................17

CERTIFICATE OF COMPLIANCE AND SERVICE

CIRCUIT RULE 30(d) STATEMENT

SHORT APPENDIX

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Gall v. United States,*
 552 U.S. 38 (2007) ................................................................................................ 10

*Robinson v. California,*
 370 U.S. 660 (1962) .............................................................................................. 15

*United States v. Boultinghouse,*
 784 F.3d 1163 (7th Cir. 2015) ................................................................ 10, 11, 13

*United States v. Cunningham,*
 429 F.3d 673 (7th Cir. 2005) ........................................................................ 14, 15

*United States v. Dawson,*
 980 F.3d 1156 (7th Cir. 2020) ...................................................................... 11, 14

*United States v. Ferguson,*
 831 F.3d 850 (7th Cir. 2016) ........................................................................ 11, 12

*United States v. Figueroa,*
 622 F.3d 739 (7th Cir. 2010) .............................................................................. 10

*United States v. Jordan,*
 991 F.3d 818 (7th Cir. 2021) ................................................................ 10, 11, 13

*United States v. Miranda,*
 505 F.3d 785 (7th Cir. 2005) .............................................................................. 16

*United States v. Raney,*
 797 F.3d 454 (7th Cir. 2015) ........................................................................ 13, 14

*United States v. Robertson,*
 648 F.3d 858 (7th Cir. 2011) ................................................................ 10, 11, 16

*United States v. Snyder,*
 635 F.3d 956 (7th Cir. 2011) ................................................................ 10, 11, 13

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

Page(s)

*United States v. Vidal,*
  705 F.3d 742 (7th Cir. 2013) .................................................................. 16

*United States v. Washington,*
  739 F.3d 1080 (7th Cir. 2014) ............................................................... 12

*United States v. Williams,*
  887 F.3d 326 (7th Cir. 2018) ........................................................... 14, 15


**Statutes**

18 U.S.C. § 1466A .................................................................................. 4, 5, 6

18 U.S.C. § 3231 .......................................................................................... 1

18 U.S.C. § 3553 ............................................................................ 7, 10, 12, 13

18 U.S.C. § 3583 ........................................................................................ 10

28 U.S.C. § 1291 .......................................................................................... 1


**Sentencing Guidelines**

USSG § 7B1.1 ............................................................................................... 5

USSG § 7B1.4 ........................................................................................... 5, 6


**Procedural Rules**

Fed. R. App. P. 28(e) .................................................................................... 3

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

**JURISDICTIONAL STATEMENT**

This is a direct appeal from a final judgment of conviction in a criminal case, alleging procedural error in the sentence imposed for a violation of supervised release. The district court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction under 28 U.S.C. § 1291. On February 13, 2023, the district court orally revoked Anderson's supervised release and sentenced him to 18 months' imprisonment, followed by 30 years' supervised release. The court entered a written order the same day, and the defense timely appealed on February 27, 2023. This appeal is from a final judgment that disposes of all parties' claims.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

**ISSUE PRESENTED**

A district court procedurally errs in imposing a revocation sentence when it fails to explain the basis for its sentence or fails to give open-minded consideration to a defendant's principal mitigation argument before imposing that sentence.

The district court sentenced James Anderson to 18 months' incarceration and 30 years' supervised release for violating his supervised release conditions. The court did not explain why that particular sentence was warranted. And the court made statements indicating that it did not give open-minded consideration to the defense's argument that a three-month sentence was warranted because Anderson suffers from an addiction that requires treatment, not lengthy incarceration.

Did the district court err?

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

## STATEMENT OF THE CASE

### A.  James Anderson pleaded guilty to possessing child pornography, and a psychologist determined that he is a strong candidate for treatment.

James Anderson suffers from a serious addiction to viewing sexualized images of children, and he needs help. In 2010, he pleaded guilty to possessing child pornography. R.19.[1] A court-ordered psychosexual evaluation reported that there was no indication Anderson has been or ever would be a hands-on offender, and he was "likely to be a very positive treatment candidate." R.32-1:6–7. What's more, Anderson himself recognized that he needed treatment and wanted "to overcome [his] addiction." R.78:13–14. As he explained at his sentencing hearing: "[W]hat I really need is the Court to know and realize that I need the help, that I want the help." *Id.* at 14.

Anderson was punished severely for his conduct. He served a 96-month term of imprisonment. R.41:2. In mid-October 2016, he was released from prison and began a 20-year term of supervised release. App.1.

### B.  Anderson's treatment was interrupted when he relapsed during the pandemic, the court revoked his supervision, and he was re-incarcerated.

Anderson's life was significantly different when he left prison than when he entered it, but therapy kept him on the right path for years. He and his wife divorced following his release, and he became estranged from both his children. *See* R.43:3. A psychiatrist soon diagnosed him with depression and anxiety and prescribed medications. *See id.* Still, Anderson remained productive; he held a factory job, served as a caretaker for

---

[1] Abbreviations appear throughout this brief. *See* Fed. R. App. P. 28(e). All documents in the district court record are cited as "R.___:___," with the first number indicating the docket entry and the second number providing a pin citation, unless included in the Short Appendix ("App.___").

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

his ailing parents, and completed weekly sex offender treatment sessions. *Id.* He maintained a violation-free record for four years.

But Anderson's mental health suffered during the pandemic and he relapsed into past patterns of behavior, leading the Probation Office to notify the district court. The central allegation was that Anderson had kept unapproved external hard drives, which contained sexual drawings and stories involving children, as well as evidence that he had searched the Internet for child erotica. *See* App.2–3. The Probation Office also reported that Anderson had been helping his elderly father use the computer and had not returned an Amazon Fire Stick, as directed; failed to provide the password to an unauthorized laptop and had kept other unauthorized IT devices; and had used "countermeasures" (meditation techniques to calm his nerves) during a polygraph examination. *Id.* at 3–4; R.43:3. The Probation Office opined that Anderson had committed a Grade B violation, on the theory that the images on the hard drives violated 18 U.S.C. § 1466A(b). *See* R.50.

The district court, Judge Crabb presiding, disagreed with the Probation Office's assessment of the images but sentenced Anderson harshly. Without analysis, the court held that the Government had not proven that Anderson's possession of the drawings constituted a new felony violation of § 1466A(b) and left unanswered whether the images themselves violated any condition of Anderson's supervised release. *See* App.2; R.79:4. Instead, the court found Anderson had violated other conditions—lying to the Probation Office, possessing unauthorized IT devices, and not successfully completing a psychosexual polygraph examination—and revoked his supervised release. App.3–4. Those violations amounted to a Grade C violation and carried a Guidelines range of 3–9 months'

4

incarceration. *Id.* at 4; USSG §§ 7B1.1(a)(3), 7B1.4(a). Yet, the court sentenced Anderson to 18 months' incarceration and 20 years' supervised release. App.5–6.

### C. Deprived of therapy for more than a year, Anderson relapsed a second time; again, he was revoked and incarcerated.

Being revoked substantially delayed Anderson's return to therapy. Anderson self-surrendered in early April 2021 and was released in mid-July 2022, when he began the new 20-year term of supervised release. *See* R.53; R.57:4. But he could not resume treatment with his therapist until September 2022—18 months after his last session. R.57:4.[2]

In the meantime, Anderson struggled. Following visits to Anderson's home in late-August 2022 (before therapy resumed) and mid-September 2022 (just after therapy resumed), the Probation Office seized unauthorized hard drives that contained drawings and computer-generated images of child sexual exploitation, as well as sexualized stories involving children; an unauthorized Roku; and hard copies of sexualized stories. *See* App.16–18. In addition, Anderson lied to the Probation Office about possessing the IT devices and stories, having sexual thoughts about minors (on one occasion), and accessing the Internet to run a Carfax report. *Id.* at 17–18. He also had not yet told his sex-offender treatment provider about those devices or sexual thoughts. *Id.* at 18. The Probation Office initiated revocation proceedings, again contending that Anderson's possession of the images constituted a new felony violation of § 1466A(b). *See* R.58.

---

[2] Anderson reports that he received no sex-offender treatment while incarcerated.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

Before the district court, Judge Conley presiding, the parties disputed whether the images were illegal but agreed that Anderson's conduct ran afoul of other release conditions. *See* R.63; R.64. The defense asked the court to impose a sentence at the low-end of the Guidelines range (three months) so that Anderson could resume treatment as quickly as possible. *See* R.63:4. The defense's argument was straightforward: the record reflects that "Anderson struggles with an addiction" for which relapses can and did occur, he "admits he has a problem," and he is "willing[] to face his demons" through therapy, but treatment is a protracted process. *Id.* at 3–4; App.35. The court also received a letter from Anderson's counselor, who reported that Anderson "had attended all of his scheduled appointments" and that "[i]t would be beneficial for [him] to continue participating with his current treatment." R.77. Meanwhile, the Government asked the court to impose an above-Guidelines sentence of 12 months' incarceration, "with additional supervised release to follow." R.64:3.

The court calculated the Guidelines range without addressing whether the images Anderson possessed were illegal. The court stated that it was "disinclined to go down th[e] road" of deciding whether the images were obscene (and violated § 1466A(b)). App.17. Instead, the court found that Anderson had committed a Grade C violation by lying to the Probation Office about the unauthorized devices, sexual materials, and sexual thoughts; not being forthcoming with his sex offender counselor about the same devices, materials, and thoughts; and not seeking advance approval to possess IT devices. *Id.* at 17–18. Thus, the applicable Guidelines range was 3–9 months. *Id.* at 18; USSG § 7B1.4(a).

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

Anderson underlined counsel's mitigation argument in his allocution by imploring the court to permit him to continue his therapy sessions. He explained that he wanted to avoid "the cycle of relapse" and falling into "old habits" and that he believed he could do so with "treatment and therapy sessions." App.36. In a series of questions, the court asked Anderson why he had possessed the materials, and Anderson could point only to "old habits." *Id.* at 37–38. Indeed, Anderson was forthcoming: he "could not really explain" his behavior otherwise. *Id.* at 38. In other words, and as the record reflects, he has an addiction that requires ongoing treatment.

Rejecting each party's recommendation, the court sentenced Anderson to 18 months' incarceration and 30 years' supervised release. Citing generally to "Chapter 7 of the Guidelines Manual" and quoting 18 U.S.C. § 3553(a), the court noted that its sentence would hold Anderson accountable, protect the community, effect deterrence, and ensure consistent treatment of like offenders (although the court identified no similarly situated defendant or other data). *See id.* at 19, 38. As to the 18-month prison term, the court noted only that the defense had "argued for a lower sentence," but the court "couldn't get [itself] around at least giving [Anderson] what Judge Crabb gave [him] for what was the first violation after a long period of good behavior" and that there was "really no good result here . . . because [Anderson] ha[dn't] been able to find a way not to fall back into [his] old habits." *See id.* at 40–41. As to the 30 years of supervised release, the court stated only that a "lengthy term" was needed to assist Anderson upon release. *Id.* at 20, 39.

The court also emphasized its personal distaste for Anderson's behavior, but it did not offer those statements as a reason for either part of Anderson's sentence. Instead, the

7

court simply stated that it found the illustrations and stories "deeply concerning." *Id.* at 19. It also was troubled by the fact that Anderson had "engage[d] in this behavior while on home confinement even before his supervised release term commenced," did not turn the devices over proactively, and had committed the "same violations" previously. *See id.* And, despite the letter from Anderson's therapist and Anderson's own statements, the court assumed that Anderson's possession of the sexualized drawings and stories evidenced his "disinterest in meaningful . . . sex offender treatment." *Id.*; *accord id.* at 18 (assuming Anderson "was not fully engaged in treatment"). The court tethered none of these statements to its selection of 18 months' imprisonment or 30 years' supervised release. Nor did it acknowledge that Anderson had an addiction.

The court entered its written order the same day as its oral pronouncement, and Anderson self-surrendered four days later. *Id.* at 19. He then timely filed this appeal. R.69.

Federal Defender Services
of Wisconsin, Inc.

## SUMMARY OF THE ARGUMENT

Procedural irregularities plague Anderson's second revocation sentence and demand correction. First, the court offered no explanation for why 18 months' imprisonment and 30 years' supervised release was a sentence sufficient, but not greater than necessary, to serve the legitimate aims of a revocation sentence. Instead, the court simply stated that it could not impose a revocation sentence lower than what Anderson had received previously and offered no justification for a term of imprisonment that is double the high-end of the Guidelines range. Second, the court made statements indicating that it did not consider with an open mind the defense's argument that Anderson has an addiction that requires treatment, not lengthy incarceration. For either reason, Anderson's sentence must be vacated and the case remanded for resentencing.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

# ARGUMENT

## I. The district court erred when it failed to explain why each term of Anderson's sentence was sufficient but not greater than necessary.

Procedural error arises when the district court fails to explain the reasons for its sentencing decision. The court has an obligation to "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *United States v. Figueroa*, 622 F.3d 739, 744 (7th Cir. 2010) (cleaned up); *accord United States v. Boultinghouse*, 784 F.3d 1163, 1177 (7th Cir. 2015). That obligation means the court must say enough to demonstrate to the appellate court that it considered both the Guidelines and the relevant statutory factors from § 3553(a) and, therefore, imposed a sentence that is "sufficient, but not greater than necessary." 18 U.S.C. §§ 3553(a), 3583(e)(3); *United States v. Robertson*, 648 F.3d 858, 859–60 (7th Cir. 2011). Indeed, "[s]entences must always conform to the broad command of th[at] parsimony principle." *United States v. Jordan*, 991 F.3d 818, 822 (7th Cir. 2021) (cleaned up). And, importantly, a "major departure" from the advisory Guidelines range requires the court to provide "a more significant justification than a minor one." *Gall v. United States*, 552 U.S. 38, 50 (2007); *accord United States v. Snyder*, 635 F.3d 956, 961 (7th Cir. 2011).

Absent from this record is any meaningful explanation of, let alone a "significant justification" for, Anderson's double-the-Guidelines sentence. Instead, the district court left this Court to guess why an 18-month term of imprisonment and a 30-year term of

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

supervised release were sufficient but not greater than necessary. This court reviews such procedural errors de novo. *Snyder*, 635 F.3d at 959.[3]

a.    The district court did not adequately explain why 18 months' incarceration was sufficient but not greater than necessary. The court simply assumed, without explanation, that Anderson's first revocation sentence *had* to serve as the baseline for the current sentence—the court "couldn't get [itself] around at least giving [Anderson] what Judge Crabb gave [him]." *See* App.41. The court cited generally to "Chapter 7 of the Guidelines Manual" (*see id.* at 19, 38), but there is no Chapter 7 policy statement that demands that recidivist behavior automatically be subjected to the same or greater punishment. Put simply, 18 months was not a mandatory minimum. Having highlighted that the applicable range was 3–9 months' incarceration, the court needed to explain "why [it] found the guideline range so inadequate." *See United States v. Ferguson*, 831 F.3d 850, 854–55 (7th Cir. 2016); *Robertson*, 648 F.3d at 860. And it needed "to say explicitly why it thought that [18] months in prison was necessary." *See Jordan*, 991 F.3d at 823. Although the district court remarked on the content of the images, the timing of Anderson's relapse, and the fact that Anderson had violated his conditions previously, it tied those remarks to neither the term of imprisonment nor the term of supervised release that it selected.

_____

[3] This Court has offered competing statements concerning the applicable standard of review for procedural errors in a revocation sentence. *Compare, e.g., Boultinghouse*, 784 F.3d at 1177–79 (describing review as "highly deferential"), *with, e.g., United States v. Dawson*, 980 F.3d 1156, 1164–65 (7th Cir. 2020) (describing review for procedural error as "de novo" and review for substantive unreasonableness as "highly deferential"); *see also Jordan*, 991 F.3d at 823 (appellate court would have reviewed reasons for a revocation sentence for an abuse of discretion but district court provided no reasons). Anderson submits that de novo review is the governing standard here, but vacatur and remand are required even if a more deferential standard applies.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

That leaves this Court to guess which of the district court's statements, if any, were meant to justify which portion of its sentence, if any.

In fact, this Court is left to wonder why the district court rejected *both* parties' recommendations for a sentence lower than the one it imposed. This Court has found reversible procedural error where a district court ignored both parties' sentencing recommendations and imposed a sentence "more than two and a half times[] longer than the upper end of the guidelines range" without explaining why. *See Ferguson*, 831 F.3d at 855. That essentially is what happened here. The defense recommended a sentence at the low-end of the Guidelines range; the Government recommended an out-of-range 12-month sentence; and the district court imposed an 18-month sentence—a sentence 150% longer than what the Government recommended and 200% longer than what the Guidelines recommended. At no point did the court explain why its sentence was sufficient but not greater than necessary. Indeed, the court did not even explain why the Government's recommendation was insufficient.

The district court's boilerplate recitation of the § 3553(a) factors does not cure the error. This Court has identified procedural error and reversed where a district court imposed a sentence with little more explanation than a "summary assertion that it had 'considered all the factors of 18 U.S.C. § 3553(a).'" *United States v. Washington*, 739 F.3d 1080, 1081 (7th Cir. 2014). The same type of error occurred here; the district court quoted the relevant § 3553(a) factors but did not explain how the sentence it selected furthered those sentencing aims. App.19, 38. Statutory boilerplate is not sufficient. The court needed to provide "at least a minimal statement of [its] reason for the sentence," "explicitly" tied to

12

the particular terms it imposed. *See Jordan*, 991 F.3d at 823 (second quote); *Boultinghouse*, 784 F.3d at 1178–79 (first quote). Indeed, it is not even clear whether the district court truly considered how Anderson's double-the-Guidelines sentence compared to other similarly situated offenders, given that the court never discussed a single other comparator case or data point. This Court has vacated a revocation sentence under similar circumstances, where the court imposed a sentence more than double the recommended Guidelines range yet "never discussed whether [the defendant's] sentence would create unwarranted sentencing disparities among defendants." *See Snyder*, 635 F.3d at 961. It follows that Anderson's sentence must be vacated, too.

b.    The district court also did not explain why it selected a 30-year supervised release term. The court cited the need for a "lengthy" term of supervised release (App.20, 39), but the 20-year term previously imposed certainly met that description. The court articulated neither why 20 years was insufficient nor why 30 years was sufficient, but not greater than necessary. There is no basis in the record, then, for this Court to know why the additional 10 years were warranted and were consistent with the spirit of § 3553(a)'s parsimony principle. *Contra Jordan*, 991 F.3d at 822.

The court's failure to explain the 30-year supervised release term alone requires remand for resentencing. A revocation sentence that consists of both a term of imprisonment and a term of supervised release is a package, and the Court must vacate the entire sentence even if its decision alters only one term. *See United States v. Raney*, 797 F.3d 454, 467 (7th Cir. 2015). On the facts presented in *Raney*, the district court "arguably justified its selection of the nine month term of imprisonment," but it provided no "explanation

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

for its selection of a twenty-four month term of supervised release or the conditions imposed," and this Court therefore vacated the entire sentence. *Id.* The same result must follow here. Absent any explanation for the court's decision to impose 30 years' supervised release, this Court is "unable to review the propriety of the district court's decision"; the entire sentence must be vacated and the case remanded. *See id.*

## II. The district court erred when it did not give open-minded consideration to the defense's argument that Anderson's addiction warrants a shorter sentence.

At a revocation sentencing hearing, the defense is responsible for advancing all its mitigation arguments, and the district court is responsible for hearing those arguments "with an open mind." *United States v. Williams*, 887 F.3d 326, 328 (7th Cir. 2018) (cleaned up) (citing *United States v. Cunningham*, 429 F.3d 673 (7th Cir. 2005)). Procedural error occurs when a district court "predetermine[s] the appropriate punishment" instead of "consider[ing] the evidence and arguments presented before imposing punishment." *Id.* (cleaned up). This Court reviews that type of procedural error de novo, as well. *Dawson*, 980 F.3d at 1164; *see also supra* note 3.

When imposing its sentence in this case, the district court made statements indicating that it misunderstood the defense's principal mitigation argument or, worse still, that it had approached the hearing with a closed mind. The court noted only that the defense had asked for a "lower sentence." *See* App.41. But counsel had submitted that a term of incarceration at the low-end of the Guidelines range was warranted because Anderson's behavior was a relapse (a return to "old habits") indicative of a broader addiction; treatment, not prison, is the solution when mental health is at stake. *See* R.63:3–4; *see*

14

*also* App.35. Indeed, as Justice Douglas wrote: "If addicts can be punished for their addiction, then the insane can also be punished for their insanity. Each has a disease and each must be treated as a sick person." *Robinson v. California*, 370 U.S. 660, 674 (1962) (Douglas, J., concurring). At no point did the district court acknowledge that argument. Rather, the court appears to have missed the defense's (and Justice Douglas's) point: by lamenting that there was "really no good result here," the court blamed Anderson—who had been without treatment for 18 months—for failing to "find a way not to fall back into [his] old habits." *See* App.40; *see also id.* at 19, 34 (expressing frustration that Anderson was engaged in the "same violations"). And, troublingly, by treating Anderson's prior revocation sentence as a mandatory minimum, the district court appears to have "predetermine[d] the appropriate punishment" rather than listening "with an open mind" to the defense's argument. *Cf. Williams*, 887 F.3d at 328 (cleaned up). This procedural error independently demands reversal.

This isn't a case in which the defense's argument was "so weak as not to merit discussion" or open-minded consideration. *Cf. id.*; *Cunningham*, 429 F.3d at 679. Indeed, ample record evidence before the district court demonstrated that Anderson suffers from a serious mental health condition—an addiction—and requires treatment rather than lengthy incarceration. The presentence investigation report, to which the defense pointed in its sentencing letter, details Anderson's troubled history. *See* R.63:3; R.22:4–9 (¶¶7–16, 25–34). The psychosexual evaluation found that Anderson was a strong candidate for treatment. *See* R.32-1:6. Anderson's current counselor opined that he was diligently pursuing treatment and would continue to benefit from it. R.77. Defense counsel argued that

15

treatment is a process, not a one-stop solution. *See* App.35. And Anderson himself told the judge that he knew he suffered from a disease, that therapy was helpful to him, and that he wished to continue. *See id.* at 35–37. What's more, this Court has identified procedural error, on direct review, when a sentencing court ignored a defendant's mitigation argument premised on mental health issues. *E.g.*, *United States v. Vidal*, 705 F.3d 742, 744–45 (7th Cir. 2013); *United States v. Miranda*, 505 F.3d 785, 792–94 (7th Cir. 2005). In other words, Anderson's need for treatment is this record's theme, and the defense's argument for a shorter prison term in light of his addiction had force and warranted open-minded consideration.

Nor can this Court presume that the district court thought the argument too weak to address. Importantly, "the judge didn't say that"; and this Court has made clear that it will not simply assume that a district court "must have had a good reason for imposing a sentence . . . twice as long as the maximum recommended by the Sentencing Commission." *See Robertson*, 648 F.3d at 860 (emphasis omitted). Thus, vacatur and remand are required.

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

# CONCLUSION

Anderson, like all individuals sentenced for violating supervised release, was entitled to certain procedural safeguards. Specifically, the district court had to explain its sentencing decision. And, before selecting that sentence, the court needed to give open-minded consideration to the arguments advanced on Anderson's behalf. These requirements applied regardless of the violations at issue.

But the record here does not reflect fulfillment of those procedural promises. Instead, the district court imposed a sentence far beyond both the Guidelines *and* the parties' recommendations, without adequate explanation. And the court's statements indicate that it either did not understand the defense's mitigation argument or refused to consider it with an open mind before imposing its draconian sentence.

These procedural errors demand correction. Thus, the defense asks this Court to vacate Anderson's sentence and remand for resentencing.

Respectfully submitted,

*/s/ Jessica Arden Ettinger*
Jessica Arden Ettinger
FEDERAL DEFENDER SERVICES
    OF WISCONSIN, INC.
22 East Mifflin Street, Suite 1000
Madison, WI 53703
Phone: (608) 260-9900
Fax: (608) 260-9901
jessica_ettinger@fd.org

*Counsel for James Anderson*

17

## CERTIFICATE OF COMPLIANCE AND SERVICE

Counsel for James Anderson certifies that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B), as modified by Circuit Rule 32(c), because it contains no more than 14,000 words, excluding the parts of the document exempt by Federal Rule of Appellate Procedure 32(f). Specifically, the brief contains 4,019 words, as counted by the word-count feature of Microsoft Word.

Counsel further certifies that this document complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6), as modified by Circuit Rule 32. This document has been prepared in a proportionally spaced typeface using Book Antiqua, 12-point font (and 11-point footnotes), in Microsoft Word.

On this 5th day of June, 2023, the foregoing document was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the Court's CM/ECF system, which will provide electronic service on all counsel of record.

*/s/ Jessica Arden Ettinger*
Jessica Arden Ettinger

*Counsel for James Anderson*

## CIRCUIT RULE 30(d) STATEMENT

Pursuant to Circuit Rule 30(d), counsel for James Anderson certifies that all the materials specified in Circuit Rule 30(a) and (b) are included in the Short Appendix that is attached to this brief.

June 5, 2023

*/s/ Jessica Arden Ettinger*
Jessica Arden Ettinger

*Counsel for James Anderson*

**SHORT APPENDIX**

FEDERAL DEFENDER SERVICES
OF WISCONSIN, INC.

## INDEX TO SHORT APPENDIX

**Starting Page**

A-1: Order on Judicial Review, March 4, 2021 ................................................................App.01

A-2: Order on Judicial Review, February 13, 2023 .......................................................App.15

A-3: Transcript of Judicial Review, February 13, 2023 ................................................App.27

Federal Defender Services
of Wisconsin, Inc.

A-1

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

           Plaintiff,

                                    ORDER

                                    09-cr-152-bbc-1

     v.

JAMES ANDERSON,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      A hearing on the probation office's petition for judicial review of James Anderson's supervised release was held on March 4, 2021, before U.S. District Judge Barbara B. Crabb.  The following parties appeared by Zoom video conferencing:  Assistant U.S. Attorney Meredith Duchemin, defendant, defense counsel Greg Dutch, and U.S. Probation Officer Catherine Cwirla.

      From the record, I make the following findings of fact.

FACTS

      Defendant was sentenced in the Western District of Wisconsin on April 15, 2010, following his conviction for possession of child pornography, in violation of 18 U.S.C § 2252(a)(4)(B). This offense is a Class C felony. Defendant was committed to the custody of the Bureau of Prisons to serve a 96-month term of imprisonment with a 20-year term of supervised release to follow.  He began his term of supervised release on October 14, 2016.

1

It is alleged that defendant violated the Mandatory Condition that he not commit another federal offense when he possessed obscene visual representations of the sexual abuse of children, in violation of 18 U.S.C. § 1466A(b).

Defendant admitted that he owned the seized devices, that he possessed them for several months, that he knew of the specific content on the devices and that he viewed child pornography on the devices. A forensic analysis of defendant's unauthorized devices revealed more than 1,000 images, including animated images of minors engaged in sexually explicit conduct. These animated images depicted prepubescent boys and girls, toddlers, and infants engaged in anal, oral and vaginal sexual acts with adults and other minors, as well as images of the children displaying their genitals in a lascivious fashion. The devices also contained more than 6,000 sexuality explicit text documents, many of which included stories about minors engaged in sexually explicit acts with adults and other minors. The government has not proved by a preponderance of the evidence that the images possessed by defendant qualify as a violation of 18 U.S.C. § 1466A(b). Therefore, defendant's possession of these images does not constitute a federal offense.

Although I do not find a Grade B violation, the content of these devices is a matter of concern, demonstrating defendant's sexually deviant attitudes and sexual preference for minors, as well as his deceit and disregard for sex offender treatment. In addition to the animated images depicting child exploitation, the devices defendant possessed contained numerous video and image files of bestiality and adult pornography.

Defendant also had access to the Internet on various devices that were neither authorized nor monitored. He searched various web browsers for child erotica and child

2

exploitation, using sexually explicit search terms such as toddlers, child erotica, young boy, and teen. He accessed various Internet applications, including TikTok and Kik, and he subscribed to user-submitted Internet forums related to pornography.

Defendant violated Standard Condition No. 3, which required him to truthfully answer all inquiries by the probation officer and follow the instructions of the probation officer. On multiple occasions, the probation office directed defendant not to access the computer at his parents' residence. On October 15, 2020, defendant admitted that he had used his parents' computer. He agreed not to do so again, but on October 28, 2020, defendant's father reported that defendant had accessed his computer that morning. Further, defendant was directed to return an Amazon Fire Stick he had purchased without obtaining prior approval. He provided the probation office a receipt as proof of return; however, on January 6, 2021, the probation office observed an Amazon Fire Stick in defendant's residence. Although defendant initially feigned ignorance about the presence of this device, he later admitted it belonged to him. On January 6, 2021, defendant also failed to provide the password for the unauthorized laptop the probation office seized from his residence.

Defendant violated Standard Conditions Nos. 7 and 8, requiring him to provide the probation office advance notification of any IT devices and forbid him to possess any visual or audio recording devices. On October 30, 2019, defendant was found in possession of a second cell phone he did not have approval to possess. On January 6, 2021, defendant was found in possession of multiple IT devices, including a laptop, Amazon tablet device, Amazon Fire Stick, and multiple external hard drives. The

3

unauthorized laptop and tablet device had built-in cameras and Wi-Fi capabilities. Defendant did not have prior approval to use these devices.  He stated that one of the hard drives contained child pornography and admitted that he had viewed the child pornography several months earlier. Defendant failed to provide the correct password for the devices. Initially, he stated he was fixing the devices for a coworker but later admitted he had lied, and the devices belonged to him.

Defendant violated Special Condition No. 14 requiring him to undergo psychosexual evaluations. On November 8, 2018, defendant used countermeasures during a polygraph examination, leaving the examiner unable to render an opinion on the exam. Defendant manipulated his breathing despite being told to desist, mis-answered a control question, and admitted to taking medications before the exam.

CONCLUSIONS

Defendant's violations warrant revocation.  His criminal history score falls within Criminal History Category I.  When that score is coupled with a Grade C violation, the advisory guideline imprisonment range is 3 to 9 months. According to 18 U.S.C. § 3583(e)(3), the statutory maximum term to which defendant may be sentenced upon revocation is two years because the offense of conviction is a Class C felony. Title 18 U.S.C. § 3583(h) and (k) authorizes another term of supervised release to follow imprisonment if supervision is revoked.

The nature of the devices, the number of them, the content on the devices, and the extent of defendant's efforts to seek and view animated images of child exploitation

4

and child erotica warrant an upward variance from the advisory guidelines under 18 U.S.C. § 3553(a).

After reviewing the non-binding policy statements of Chapter 7 of the Guidelines Manual, as well as the sentencing factors at 18 U.S.C. § 3553(a), I am persuaded that a variance above the advisory sentencing guideline range is reasonable and no greater than necessary to achieve the statutory purposes of sentencing upon revocation. Defendant has demonstrated significant deceit and manipulation throughout his term of supervised release. He lied about his sexual thoughts and was dishonest with both the probation office and his treatment provider.  In addition, he possessed numerous unapproved IT devices; and has been viewing a significant number of animated images depicting children engaged in sexually explicit conduct.   It is clear that defendant is not invested in treatment. He uses deceit and manipulation to engage in conduct that further reinforces his deviant sexual thoughts and behaviors for his own sexual gratification. Defendant presents a significant danger to the community. The intent of this sentence is to hold defendant accountable for his repeated violations, to reflect the seriousness of the offense to protect the community, and to promote specific and general deterrence.

ORDER

IT IS ORDERED that defendant's term of supervised release originally imposed on April 15, 2010, is REVOKED, and defendant is committed to the custody of the Bureau of Prisons for term of 18 months' imprisonment.  This sentence is appropriate despite the grade of the violation.

I recommend that defendant serve the last 90 days of his confinement in a residential reentry center, with work release privileges. A 20-year term of supervised release will follow to address the risks and needs that are still present in this case. Defendant's poor adjustment to supervision indicates that he will require future assistance making he transition back into the community following the term of imprisonment that is intended to address the risks and needs he presents in this case. The standard and special conditions set out below, together with the mandatory conditions of supervised release, are reasonably related to the offense of conviction and to defendant's personal history and characteristics.

## **Mandatory Conditions - 18 U.S.C. § 3563(a) and 18 U.S.C. § 3583(d)**

- Defendant shall not commit another federal, state, or local crime. [Note: Any defendant that has been convicted of a felony offense, or is a prohibited person, shall not possess a firearm, ammunition, or destructive device pursuant to 18 U.S.C. §§ 921 and 922.]

- Defendant shall not illegally possess a controlled substance. The defendant is subject to drug testing according to 18 U.S.C. §§ 3563(a)(5) and 3583(d).

- Defendant shall cooperate with the collection of DNA by the U.S. Justice Department and/or the U.S. Probation and Pretrial Services Office as required by Public Law 108-405.

| | STANDARD CONDITIONS OF SUPERVISION | JUSTIFICATION |
|---|---|---|
| 1) | **Defendant shall not knowingly leave the judicial district in which defendant is being** | To provide community protection, rehabilitation for defendant, and to |

6

| | | |
|---|---|---|
| | **supervised without the permission of the Court or probation officer.** | enable the supervising probation officer's statutory duty to keep informed of defendant's location, conduct, condition, and compliance. 18 U.S.C. § 3553(a)(1), (a)(2)(B) and (C); 18 U.S.C. § 3563(b)(14); 18 U.S.C. § 3603(2) and (7); USSG § 5B1.3(b)(1)(A), (C), (D) and (b)(2); USSG § 5D1.3(b)(1)(A), (B), (C) and (b)(2). |
| 2) | **Defendant is to report to the probation office as directed by the Court or probation officer and shall submit a complete written report within the first five days of each month, answer inquiries by the probation officer, and follow the officer's instructions. The monthly report and the answer to inquiries shall be truthful in all respects unless a fully truthful statement would tend to incriminate defendant, in violation of defendant's constitutional rights, in which case defendant has the right to remain silent.** | To provide community protection, rehabilitation for defendant, to ensure officer and defendant safety, and to enable the supervising probation officer's statutory duty to keep informed of defendant's location, conduct, condition, and compliance. 18 U.S.C. § 3553(a)(1), (a)(2)(B), (C) and (D); 18 U.S.C. § 3563(b)(15) and (17); 18 U.S.C. § 3603(2), (3), (4) and (7); USSG § 5B1.3(b)(1)(B)(C), (D), (E) and (b)(2); USSG § 5D1.3(b)(1)(B), (C), (D) and (b)(2). |
| 3) | **Defendant shall maintain lawful employment, seek lawful employment, or enroll and participate in a course of study or vocational training that will equip defendant for suitable employment, unless excused by the probation officer or the Court.** | Evidence based practice research indicates that lawful, stable employment and education are pro-social activities that reinforce the rehabilitation of defendant. Employment and education have been identified as risk factors for recidivism. 18 U.S.C. § 3553(a)(2)(B), (C) and (D); 18 U.S.C. § 3563(b)(4) and (5); 18 U.S.C. § 3603(2), (3), (4) and (7); USSG § 5B1.3(b)(1)(C), (D) and (E); USSG § 5D1.3(b)(1)(B), (C) and (D). |
| 4) | **Defendant shall notify the probation officer within seventy-two hours of any change in residence, employer, or any change in job classification.** | To provide community protection, rehabilitation for defendant, to ensure officer and defendant safety, and to enable the supervising probation officer's statutory duty to keep informed of defendant's location, conduct, condition, and compliance. 18 U.S.C. § 3553(a)(2)(C); 18 U.S.C. § 3563(b)(13), (15), (16) and (19); 18 |

7

| | | |
|---|---|---|
| | | U.S.C. § 3603(2), (3), (4) and (7); USSG § 5B1.3(b)(1)(D) and (b)(2); USSG § 5D1.3(b)(1)(C). |
| 5) | **Defendant shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician. Defendant shall not use any product containing cannabidiol (CBD) or tetrahydrocannabinol (THC), except as prescribed by a physician.** | Evidence based practice research indicates the use of illicit chemicals is a risk factor for recidivism. This condition is recommended to assist with defendant's rehabilitation, officer and defendant safety, and to protect the public.   18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and (C); 18 U.S.C. § 3563(b)(7); 18 U.S.C. § 3603(3); USSG § 5B1.3(b)(1)(A), (B), (C) and (D); USSG § 5D1.3(b)(1)(A), (B) and (C). |
| 6) | **Defendant shall not visit places where defendant knows or has reason to believe controlled substances are illegally sold, used, distributed, or administered.** | Evidence based practice research indicates that frequenting places where illicit chemicals are sold, used, distributed or administered increases the risk that defendant will purchase, use or possess illicit chemicals.   Individuals involved in the distribution of illicit chemicals present a risk of peer association as identified in the research. This condition supports rehabilitation of defendant and promotes public safety. 18 U.S.C. § 3553(a)(1), (a)(2)(B) and (C); 18 U.S.C. § 3563(b)(6); 18 U.S.C. § 3603(3); USSG § 5B1.3(b)(1)(A), (B), (C), (D) and (b)(2); USSG § 5D1.3(b)(1)(A), (B) and (C). |
| 7) | **Defendant shall not meet, communicate, or spend time with any persons defendant knows to be engaged in criminal activity or planning to engage in criminal activity.** | Evidence based practice research indicates that association with peers involved in criminal activity increases the risk of recidivism. This condition promotes and encourages pro-social relationships that are conducive to a law-abiding lifestyle.   18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and (C); 18 U.S.C. § 3563(b)(6); 18 U.S.C. § 3603(3); USSG § 5B1.3(b)(1)(B), (C) and (D); USSG § 5D1.3(b)(1)(B) and (C). |
| 8) | **Defendant shall permit a probation officer** | Community contacts ensure compliance |

8

| | | |
|---|---|---|
| | to visit defendant at home, work, or at some other mutually convenient location designated by the probation officer at any reasonable time and shall permit confiscation of any contraband observed in plain view by the probation officer. | with court-ordered conditions and assist defendant in maintaining a law-abiding lifestyle. 18 U.S.C. § 3553(a)(1), (a)(2)(A), (B), and (C); 18 U.S.C. § 3563(b)(13), (15), (16) and (17); 18 U.S.C. § 3603(2), (3), (4) and (7); USSG § 5B1.3(b)(1)(A), (B), (C), (D) and (b)(2); USSG § 5D1.3(b)(1)(A), (B), (C) and (b)(2). |
| 9) | Defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer. | To provide for community safety and rehabilitation of defendant. 18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and (C); 18 U.S.C. § 3563(b)(18); 18 U.S.C. § 3603(2), (3), (4) and (7); USSG § 5B1.3 (b)(1)(A), (B), (C) and (D); USSG § 5D1.3 (b)(1)(A), (B) and (C). |
| 10) | Defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the Court. | Evidence based practice research indicates contact with criminals and potential involvement in facilitating other crimes sanctioned by law enforcement officers directly contradicts the condition of no new offenses and criminal associations, which are risk factors for recidivism. Therefore, strict monitoring by the Court/probation office is necessary for the safety of the community, defendant, and the supervising probation officer. 18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and (C); 18 U.S.C. § 3563(b)(5), (6), (15), (17) and (18); 18 U.S.C. § 3603(2), (3), (4) and (7); USSG § 5B1.3(b)(1)(A), (B), (C) and (D); USSG § 5D1.3(b)(1)(A), (B) and (C). |
| 11) | Defendant shall report to the probation office in the district to which defendant is released within 72 hours of release from the custody of the Bureau of Prisons, unless instructed by a U.S. probation officer to report within a different time frame. | To review and clarify conditions of supervision imposed by the court at sentencing. To assist with risk and needs assessment, monitoring requirements, release planning, and program referrals. To set goals for supervision. 18 U.S.C. § 5363(b)(15); USSG §§ 5B1.3(c)(1); USSG § 5D1.3(c)(1). |
| 12) | Defendant shall not possess a firearm, | To comply with statutory provisions. To |

9

| ammunition, destructive device, or dangerous weapon. | provide for community safety, as well as the safety of the supervising U.S. probation officer.<br>18 U.S.C. §§ 921 and 922; 18 U.S.C. § 5363(b)(10); USSG § 5D1.3(c)(10); and *U.S. v. Armour*, 804 F.3d 859, 869 (7th Cir. 2015). |

**Special Conditions**

| | SPECIAL CONDITIONS OF SUPERVISION | JUSTIFICATION |
|---|---|---|
| 13) | **Submit person, property, residence, papers, vehicle, computers [as defined in 18 U.S.C. § 1030(e)(1), or other electronic communications, data storage device, or media], or office to a search conducted by a U.S. Probation Officer at a reasonable time and manner, whenever the probation officer has reasonable suspicion of contraband or of the violation of a condition of release relating to substance abuse or illegal activities; failure to submit to a search may be a ground for revocation; defendant shall warn any other residents that the premises defendant is occupying may be subject to searches pursuant to this condition.** | Based on the nature of the offense of conviction, his prior criminal record that includes possession of child pornography, his noncompliance while on supervised release, the need to protect the public from further criminal activity perpetrated by defendant, and the need to ensure the safety of the supervising U.S. Probation Officer. |
| 14) | **As approved by the supervising U.S. Probation Officer, undergo psychosexual evaluations which may involve use of polygraph examinations. Defendant shall participate in an outpatient sex offender counseling program if recommended by the evaluator, which may involve the continued use of polygraph examinations. Defendant's answers to questions by the treatment provider, probation officer and polygraph examiner shall be truthful in all respects unless a fully truthful statement would tend to incriminate defendant, in violation of defendant's constitutional rights, in which case defendant has the** | Based on the nature of the offense of conviction, his prior criminal record that includes possession of child pornography, violations during prior periods of supervision, and to assist in identifying and addressing defendant's acute and stable dynamic risk factors for re-offending. |

| | | |
|---|---|---|
| | right to remain silent. Defendant shall follow all treatment requirements and restrictions.  If defendant is eligible for funding from any source to cover the cost of treatment, defendant is to make reasonable efforts to obtain such funding. Participation in treatment does not require payment by defendant unless it is clear defendant can afford it.  Defendant shall allow reciprocal release of information between the supervising U.S. probation officer and the treatment provider. | |
| 15) | Defendant shall provide the supervising U.S. Probation Officer advance notification of any devices associated with or falling within the general category of information technology (IT) that produce, manipulate, store, communicate or disseminate information used by defendant.  This includes external and portable hard drives. The probation office is authorized to install applications to monitor any such devices owned or operated by defendant. Defendant is required to comply with the monitoring agreement and may not disable or circumvent any applications. Defendant shall consent to and cooperate with unannounced examinations of any technological equipment owned or used by defendant, including but not limited to retrieval and copying of all data from all information technology devices and any internal or external peripherals based on reasonable suspicion of contraband or illegal activity. The examinations may involve removal of such equipment for the purpose of conducting examination. | Based on defendant's instant offense, his admission to viewing child pornography, his possession of unapproved IT devices on supervised release, and to assist in identifying and addressing defendant's acute and stable dynamic risk factors for re-offending. |
| 16) | Not meet or spend time with any person under the age of 18 or have verbal, written, telephonic or electronic communication with any such person, except with the | Based on defendant's instant offense, his lack of compliance on supervised release, and his admission to viewing child pornography on supervised release. |

11

|    | | |
|----|-----------------------------------------------------|-----------------------------------------------------|
|    | express permission of the minor's parent or legal guardian and the supervising U.S. Probation Officer.  This provision does not include persons under the age of 18, such as waiters, cashiers, ticket vendors, etc., with whom defendant must deal in order to obtain ordinary and usual commercial services. | |
| 17) | Not possess any material containing sexually explicit of conduct of minors as defined in 18 U.S.C. § 2256(8). | Based on the offense of conviction, the need to protect the public from further criminal activity perpetrated by the defendant, and to assist in identifying and addressing defendant's acute and stable dynamic risk factors for re-offending. |
| 18) | Provide the supervising U.S. Probation Officer any and all requested financial information, including copies of state and federal tax returns. | Based on the need to monitor his ability to support himself through legitimate means, the requirement to report place of employment under SORNA, monitor the purchase of computer equipment or online services, and to assess his ability to contribute to the cost of treatment services. |
| 19) | Defendant must allow the supervising U.S. Probation Officer to notify defendant's employers, friends, family, community organizations, and educational and volunteer agencies, where minors reside or regularly spend time, of the risks associated with defendant's criminal history involving a sex offense against a minor. | Based on the nature of the offense of conviction that includes possession of child pornography and his admissions to continued sexual thoughts about minors and viewing child pornography on supervised release. |
| 20) | Not work in any occupation, business or profession, or participate in any volunteer activity where defendant has access to children under the age of 18 without the prior approval of the supervising U.S. probation officer. | Based on the nature of the offense which involves possession of child pornography and his non-compliance while on supervised release. |
| 21) | Comply with the requirements of the Sex Offender Registration and Notification Act | Based on the offense of conviction and the need to monitor defendant's |

| | | |
|---|---|---|
| | **(42 U.S.C §16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which defendant resides, works, is a student or was convicted of a qualifying offense.** | compliance with local, state, and federal laws. |
| 22) | **Not own, use or have access to the services of any commercial mail-receiving agency or open or maintain a post office box without the prior approval of the supervising U.S. probation officer.** | Based on defendant's use and possession of devices used to seek and obtain child sexual abuse images, and the need to monitor all devices to which defendant uses or has access. |
| 23) | **Participate in mental health referral, assessment, and treatment as approved by the supervising U.S. Probation Officer and comply with all rules, regulations, and recommendations of the mental health agency or its representative to the extent approved by the supervising U.S. Probation Officer. If defendant is eligible for funding from any source to cover the cost of treatment, defendant is to make reasonable efforts to obtain such funding. Participation in treatment does not require payment by defendant unless it is clear defendant can afford it.** | Recommended based on defendant's history of mental health problems and psychotropic medication, as well as to address any risk factors. |
| 24) | **Not possess any visual or audio recording devices.** | Recommended based on defendant's instant offense and his unauthorized possession of visual or audio recording devices on supervised release. |

Defendant is to be capacity to pay the cost registered with local law enforcement agencies and the state attorney general before his release from confinement. Defendant does not have the financial means or earning of his incarceration.

13

App.13

In light of the COVID-19 pandemic, I will allow defendant to self-surrender on April 6, 2021, to begin service of his sentence. Accordingly, execution of the sentence of imprisonment is stayed until April 6, 2021, between the hours of noon and 2:00 p.m., when defendant is to report either directly to an institution designated by further court order or to the Dane County, Wisconsin, jail if he has yet to be designated to a Bureau of Prisons facility by the time of his self-surrender, or if he is unable to acquire transportation to the Bureau of Prisons facility. The present conditions are continued until defendant begins his term of imprisonment.

Defendant has the right to appeal from his sentence.

Entered this 4th day of March 2021.

BY THE COURT:

/s/_____
BARBARA B. CRABB
District Judge

14

App.14

A-2

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

<table>
<tr><td></td><td>Plaintiff,</td><td>ORDER</td></tr>
<tr><td>v.</td><td></td><td>09-cr-152-wmc-1</td></tr>
</table>

JAMES ANDERSON,

Defendant.

A hearing on the probation office's petition for judicial review of James Anderson's supervised release was held on February 13, 2023, before U.S. District Judge William M. Conley. The government appeared by Assistant U.S. Attorney Meredith P. Duchemin. Defendant was present in person and by counsel Joseph Bugni and Jonathan Greenburg. Also present was U.S. Probation Officer Alyssa Brody.

FACTS

From the record, I make the following findings of fact.  Defendant was sentenced in the Western District of Wisconsin on April 14, 2010, following his conviction for Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B), a Class C felony, then committed to the custody of the Bureau of Prisons to serve a term of imprisonment of 96 months, with a 20-year term of supervised release to follow.

On October 14, 2016, defendant began his first term of supervised release.  On March 4, 2021, that term was revoked for violating conditions of his supervised release that included not notifying his probation officer that he owned and possessed numerous information technology (IT) devices, accessing the internet on various devices that were neither authorized nor monitored, failing to provide truthful answers to inquiries, and not following instructions from his probation

App.15

officer.   The defendant also used countermeasures during a polygraph examination, leaving the examiner unable to render an opinion on the exam.   Further, forensic review of the defendant's unauthorized devices revealed animated images of minors engaged in sexually explicit conduct, along with text documents of stories about minors engaged in sexually explicit acts with adults and other minors.   For this gross violation of supervision, the defendant was revoked and sentenced to an additional 18 months imprisonment, to be followed by another 20-year term of supervised release.   On July 15, 2022, defendant began his second term of supervised release.

Regrettably, he appears to have resumed his noncompliant behavior almost immediately and again demonstrated a complete disregard for his conditions of supervised release by engaging in conduct that mirrors the violations for which he was revoked during his first term of supervised release.   Further, it is again alleged that defendant violated the Mandatory Condition against committing another federal offense by possessing obscene visual representations of the sexual abuse of children in violation of 18 U.S.C. § 1466A(b), which prohibits possession of drawings, cartoons, sculpture, paintings or other materials that depict minors engaged in sexually explicit conduct or a minor engaged in sexual intercourse that lacks serious literary, political, or scientific value.

Specifically, during an unscheduled home visit with the defendant in August 2022, the probation office conducted a plain-view seizure of a hard drive that defendant admitted to recently "finding" in his apartment.   The defendant further admitted to viewing the contents of the device, including what he described as "child anime."   After a further search of the defendant's residence, another hard drive was seized.   A forensic analysis of these two unauthorized, external hard drives revealed illustrated depictions of child exploitation.   More specifically, on one hard drive, three series of illustrated images depicting child exploitation were found:   the first depicts two

2

prepubescent females engaging in sexual acts with an adult male; the second depicts two prepubescent females engaging in bondage and sexual activity with an adult male; and the last depicts a minor male being abducted, abused, cooked, and eaten by an adult male, who describes his sexual arousal by abusing the minor.   On the second hard drive, multiple illustrated depictions of child exploitation were also revealed, including: an image of a prepubescent female being penetrated by an adult penis; an image of prepubescent female being vaginally penetrated by an adult male while she performs oral sex on a horse; and another image of a prepubescent female explicitly identified as nine years old whose legs are spread sitting in front of a partially naked adult female.   There were also over 100,000 pornographic stories located on the devices with graphic descriptions of child sexual abuse.   Certainly, images depicting the sexual exploitation of children could be found in violation of 18 U.S.C. § 1466A(b), but like Judge Crabb, I am disinclined to go down that road given the vagaries of defining obscenity and works of art, however offensive, unless the government wishes to pursue a new indictment.

In addition to the illustrated images depicting child exploitation, the devices contained numerous videos, images, and audio files involving adult pornography, and pornographic stories containing adult sexual intercourse, bestiality, cannibalism, incest, and necrophilia.   Additionally, during a search of the defendant's residence printed copies of pornographic stories were seized from his bedside table drawer.   These stories generally describe bestiality and minors engaging in sexually explicit conduct, with many involving incestual relations between minor siblings.

Defendant also violated Standard Condition No. 2, which requires him to answer truthfully all inquiries by the probation officer.   Specifically, on September 15, 2022, defendant denied having unauthorized devices or sexually explicit materials of minors in his residence.   He also denied having any sexual thoughts of minors on the same date that one of the hard drives (the

3

content of which has already been described) was located in his closet.   Further, at a later date, when confronted with this content, defendant admitted using it to masturbate in an attempt to fall asleep, although he claimed to have been unsuccessful.   Similarly, on his supplemental monthly report forms for July and August 2022, defendant indicated he seldom had any sexual thoughts or interest, and specifically denied having unauthorized access to the internet, only to later admit to utilizing a computer at his work and at a car dealership to access the internet.

Next, defendant violated Special Condition No. 14, which requires him to participate in sex offender counseling. The defendant did not inform his treatment provider of his possession of unauthorized IT devices that contained illustrated child exploitation images, nor did he share having attempted to masturbate to sexually explicit materials about minors.   Given this lack of transparency, the defendant obviously was not fully engaged in treatment or avoiding a return to conduct ensured to result in his imprisonment.

Finally, defendant violated Special Condition No. 15, which requires him to provide the probation office advance notification of any IT devices, having failed to notify the probation office of his possession of two, external hard drives, utilizing his neighbor's laptop to access and view the contents of a hard drive, and having a Roku streaming device connected to his television and his neighbor's Wi-Fi network.

## CONCLUSIONS

Defendant's violations again warrant revocation.   With a Grade C violation and a criminal history category still I, defendant only has an advisory guideline range of imprisonment of 3 to 9 months, with the statutory maximum being 24 months under 18 U.S.C. § 3583(e)(3), because the offense of conviction is also a Class C felony, although § 3583(h) and (k) authorizes imposition of

up to a life term of supervised release.

The content discovered on the hard drives and printed copies of pornographic stories is deeply concerning, underscoring the defendant's sexually deviant attitudes and sexual preference for minors, as well as his deceit and disinterest in meaningful for sex offender treatment.   Indeed, the forensic review shows he began to engage in this behavior while on home confinement, even before his supervised release term commenced, then continued to maintain possession of devices that he was aware contained illustrated images of child sexual exploitation during his supervised release term, and had no intent to be forthcoming with the probation office or his treatment provider until the devices were found and he was confronted.   Even more egregious, the defendant was revoked during his first term of supervised release for essentially the same violations.

After reviewing the non-binding policy statements of Chapter 7 of the Guidelines Manual, I am persuaded that a sentence above the advisory sentencing guideline range is reasonable and no greater than necessary to achieve the statutory purposes of sentencing upon revocation. The intent of this sentence is to hold defendant accountable for his violations, to protect the community, and to promote specific and general deterrence.


ORDER

IT IS ORDERED that the period of supervised release imposed on defendant on March 4, 2021, is REVOKED and defendant is committed to the custody of the Bureau of Prisons for a term of 18 months.   Defendant shall self-report to the Dane County Jail, 115 West Doty Street, Madison, WI 53703, between the hours of 10:00 a.m. and 2:00 p.m. this Friday, February 17, 2023, to begin serving this sentence.

5

A 30-year period of supervised release shall follow. Defendant's poor adjustment to supervision so far reflects that he will require future assistance transitioning back into the community following his term of imprisonment, and that a lengthy term of supervised release with ongoing treatment is warranted to address the risks and needs present in this case.   In addition to the mandatory conditions of supervised release, I find the standard and special conditions set forth and justified in the probation office's petition for view are reasonably related to the offense of conviction, as well as the personal history and characteristics of defendant.

### Mandatory Conditions - 18 U.S.C. §§ 3563(a) and 3583(d)

- Defendant shall not commit another federal, state, or local crime. [Note: Any defendant that has been convicted of a felony offense, or is a prohibited person, shall not possess a firearm, ammunition, or destructive device pursuant to 18 U.S.C. §§ 921 and 922.]

- Defendant shall not illegally possess a controlled substance. Defendant is subject to drug testing according to 18 U.S.C. §§ 3563(a)(5) and 3583(d) unless waived by the Court.

- Defendant shall cooperate with the collection of DNA by the U.S. Justice Department and/or the U.S. Probation and Pretrial Services Office as required by Public Law 108-405, if this requirement has not been met.

| | STANDARD CONDITIONS OF SUPERVISION | JUSTIFCATION |
|---|---|---|
| 1) | **Defendant shall not knowingly leave the judicial district in which defendant is being supervised without the permission of the Court or probation officer.** | To provide community protection, rehabilitation for defendant, and to enable the supervising probation officer's statutory duty to keep informed of defendant's location, conduct, condition, and compliance. 18 U.S.C. § 3553(a)(1), (a)(2)(B) and (C); 18 U.S.C. § 3563(b)(14); 18 U.S.C. § 3603(2) and (7); USSG § 5B1.3(b)(1)(A), (C), (D) and (b)(2); USSG § 5D1.3(b)(1)(A), (B), (C) and (b)(2). |
| 2) | **Defendant is to report to the probation office as directed by the Court or probation officer and shall submit a complete written report within the first five days of each month, answer inquiries by the probation officer, and follow the officer's instructions.   The monthly report** | To provide community protection, rehabilitation for defendant, to ensure officer and defendant safety, and to enable the supervising probation officer's statutory duty to keep informed of defendant's location, conduct, condition, and compliance. 18 U.S.C. |

6

| | | |
|---|---|---|
| | and the answer to inquiries shall be truthful in all respects unless a fully truthful statement would tend to incriminate defendant, in violation of defendant's constitutional rights, in which case defendant has the right to remain silent. | § 3553(a)(1), (a)(2)(B), (C) and (D); 18 U.S.C. § 3563(b)(15) and (17); 18 U.S.C. § 3603(2), (3), (4) and (7); USSG § 5B1.3(b)(1)(B)(C), (D), (E) and (b)(2); USSG § 5D1.3(b)(1)(B), (C), (D) and (b)(2). |
| 3) | Defendant shall maintain lawful employment, seek lawful employment, or enroll and participate in a course of study or vocational training that will equip defendant for suitable employment, unless excused by the probation officer or the Court. | Evidence based practice research indicates that lawful, stable employment and education are pro-social activities that reinforce the rehabilitation of defendant. Employment and education have been identified as risk factors for recidivism. 18 U.S.C. § 3553(a)(2)(B), (C) and (D); 18 U.S.C. § 3563(b)(4) and (5); 18 U.S.C. § 3603(2), (3), (4) and (7); USSG § 5B1.3(b)(1)(C), (D) and (E); USSG § 5D1.3(b)(1)(B), (C) and (D). |
| 4) | Defendant shall notify the probation officer within seventy-two hours of any change in residence, employer, or any change in job classification. | To provide community protection, rehabilitation for defendant, to ensure officer and defendant safety, and to enable the supervising probation officer's statutory duty to keep informed of defendant's location, conduct, condition, and compliance. 18 U.S.C. § 3553(a)(2)(C); 18 U.S.C. § 3563(b)(13), (15), (16) and (19); 18 U.S.C. § 3603(2), (3), (4) and (7); USSG § 5B1.3(b)(1)(D) and (b)(2); USSG § 5D1.3(b)(1)(C). |
| 5) | Defendant shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician.  Defendant shall not use any product containing cannabidiol (CBD) or tetrahydrocannabinol (THC), except as prescribed by a physician. | Evidence based practice research indicates the use of illicit chemicals is a risk factor for recidivism.  This condition is recommended to assist with defendant's rehabilitation, officer and defendant safety, and to protect the public. 18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and (C); 18 U.S.C. § 3563(b)(7); 18 U.S.C. § 3603(3); USSG § 5B1.3(b)(1)(A), (B), (C) and (D); USSG § 5D1.3(b)(1)(A), (B) and (C). |
| 6) | Defendant shall not visit places where defendant knows or has reason to believe controlled substances are illegally sold, used, distributed, or administered. | Evidence based practice research indicates that frequenting places where illicit chemicals are sold, used, distributed or administered increases the risk that defendant will purchase, use or possess illicit chemicals.  Individuals involved in the distribution of illicit chemicals present a risk of peer association as identified in the research.  This condition supports rehabilitation of defendant and promotes public safety. 18 U.S.C. § 3553(a)(1), (a)(2)(B) |

7

| | | |
|---|---|---|
| | | and (C); 18 U.S.C. § 3563(b)(6); 18 U.S.C. § 3603(3); USSG § 5B1.3(b)(1)(A), (B), (C), (D) and (b)(2); USSG § 5D1.3(b)(1)(A), (B) and (C). |
| 7) | **Defendant shall not meet, communicate, or spend time with any persons defendant knows to be engaged in criminal activity or planning to engage in criminal activity.** | Evidence based practice research indicates that association with peers involved in criminal activity increases the risk of recidivism. This condition promotes and encourages pro-social relationships that are conducive to a law-abiding lifestyle. 18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and C); 18 U.S.C. § 3563(b)(6); 18 U.S.C. § 3603(3); USSG § 5B1.3(b)(1)(B), (C) and (D); USSG § 5D1.3(b)(1)(B) and (C). |
| 8) | **Defendant shall permit a probation officer to visit defendant at home, work, or at some other mutually convenient location designated by the probation officer at any reasonable time and shall permit confiscation of any contraband observed in plain view by the probation officer.** | Community contacts ensure compliance with court-ordered conditions and assist defendant in maintaining a law-abiding lifestyle. 18 U.S.C. § 3553(a)(1), (a)(2)(A), (B), and (C); 18 U.S.C. § 3563(b)(13), (15), (16) and (17); 18 U.S.C. § 3603(2), (3), (4) and (7); USSG § 5B1.3(b)(1)(A), (B), (C), (D) and (b)(2); USSG § 5D1.3(b)(1)(A), (B), (C) and (b)(2). |
| 9) | **Defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer.** | To provide for community safety and rehabilitation of defendant. 18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and (C); 18 U.S.C. § 3563(b)(18); 18 U.S.C. § 3603(2), (3), (4) and (7); USSG § 5B1.3 (b)(1)(A), (B), (C) and (D); USSG § 5D1.3 (b)(1)(A), (B) and (C). |
| 10) | **Defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the Court.** | Evidence based practice research indicates contact with criminals and potential involvement in facilitating other crimes sanctioned by law enforcement officers directly contradicts the condition of no new offenses and criminal associations, which are risk factors for recidivism. Therefore, strict monitoring by the Court/probation office is necessary for the safety of the community, defendant, and the supervising probation officer. 18 U.S.C. § 3553(a)(1), (a)(2)(A), (B) and (C); 18 U.S.C. § 3563(b)(5), (6), (15), (17) and (18); 18 U.S.C. § 3603(2), (3), (4) and (7); USSG § 5B1.3(b)(1)(A), (B), (C) and (D); USSG § 5D1.3(b)(1)(A), (B) and (C). |
| 11) | **Defendant shall report to the probation office in the district to which defendant is released within 72 hours of release from the custody of** | To review and clarify conditions of supervision imposed by the court at sentencing. To assist with risk and needs assessment, monitoring |

8

| | | |
|---|---|---|
| | the Bureau of Prisons, unless instructed by a U.S. probation officer to report within a different time frame. | requirements, release planning, and program referrals. To set goals for supervision. 18 U.S.C. § 5363(b)(15); USSG §§ 5B1.3(c)(1); USSG § 5D1.3(c)(1). |
| 12) | Defendant shall not possess a firearm, ammunition, destructive device, or dangerous weapon. | To comply with statutory provisions. To provide for community safety, as well as the safety of the supervising U.S. probation officer.<br>18 U.S.C. §§ 921 and 922; 18 U.S.C. § 5363(b)(10); USSG § 5D1.3(c)(10); and *U.S. v. Armour*, 804 F.3d 859, 869 (7th Cir. 2015). |

The following special conditions are also imposed as further justified:

| SPECIAL CONDITIONS OF SUPERVISION | | JUSTIFICATION |
|---|---|---|
| 13) | Submit person, property, residence, papers, vehicle, computers [as defined in 18 U.S.C. § 1030(e)(1), or other electronic communications, data storage device, or media], or office to a search conducted by a U.S. Probation Officer at a reasonable time and manner, whenever the probation officer has reasonable suspicion of contraband or of the violation of a condition of release relating to substance abuse or illegal activities; failure to submit to a search may be a ground for revocation; defendant shall warn any other residents that the premises defendant is occupying may be subject to searches pursuant to this condition. | Based on the nature of the offense of conviction, his prior criminal record that includes possession of child pornography, his noncompliance while on supervised release, the need to protect the public from further criminal activity perpetrated by defendant, and the need to ensure the safety of the supervising U.S. Probation Officer. |
| 14) | As approved by the supervising U.S. Probation Officer, undergo psychosexual evaluations which may involve use of polygraph examinations. Defendant shall participate in an outpatient sex offender counseling program if recommended by the evaluator, which may involve the continued use of polygraph examinations. Defendant's answers to questions by the treatment provider, probation officer and polygraph examiner shall be truthful in all respects unless a fully truthful statement would tend to incriminate defendant, in violation of defendant's constitutional rights, in which case defendant has the right to remain silent. Defendant shall follow all treatment requirements and | Based on the nature of the offense of conviction, his prior criminal record that includes possession of child pornography, violations during prior periods of supervision, and to assist in identifying and addressing defendant's acute and stable dynamic risk factors for re-offending. |

9

| | | |
|---|---|---|
| | restrictions.   If defendant is eligible for funding from any source to cover the cost of treatment, defendant is to make reasonable efforts to obtain such funding.   Participation in treatment does not require payment by defendant unless it is clear defendant can afford it.   Defendant shall allow reciprocal release of information between the supervising U.S. probation officer and the treatment provider. | |
| 15) | Defendant shall provide the supervising U.S. Probation Officer advance notification of any devices associated with or falling within the general category of information technology (IT) that produce, manipulate, store, communicate or disseminate information used by defendant. This includes external and portable hard drives. The probation office is authorized to install applications to monitor any such devices owned or operated by defendant. Defendant is required to comply with the monitoring agreement and may not disable or circumvent any applications. Defendant shall consent to and cooperate with unannounced examinations of any technological equipment owned or used by defendant, including but not limited to retrieval and copying of all data from all information technology devices and any internal or external peripherals based on reasonable suspicion of contraband or illegal activity. The examinations may involve removal of such equipment for the purpose of conducting examination. | Based on defendant's instant offense, his admission to viewing child pornography, his possession of unapproved IT devices on supervised release, and to assist in identifying and addressing defendant's acute and stable dynamic risk factors for re-offending. |
| 16) | Not meet or spend time with any person under the age of 18 or have verbal, written, telephonic or electronic communication with any such person, except with the express permission of the minor's parent or legal guardian and the supervising U.S. Probation Officer.   This provision does not include persons under the age of 18, such as waiters, cashiers, ticket vendors, etc., with whom defendant must deal in order to obtain ordinary and usual commercial services. | Based on defendant's instant offense, his lack of compliance on supervised release, and his admission to viewing child pornography on supervised release. |
| 17) | Not possess any material containing sexually explicit conduct of minors as defined in 18 U.S.C. § 2256(8) and 18 U.S.C. § 1466A(b). Specifically, | Based on the offense of conviction, his violations involving possessing and viewing illustrated child exploitation |

10

| | | |
|---|---|---|
| | **defendant shall not possess or view any literary or visual depiction of any kind, including any photograph, film, video, picture, drawing, cartoon, sculpture, painting or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually stimulating or obscene material of minors.** | images while on his first two terms of supervise release, the need to protect the public from further criminal activity perpetrated by the defendant, the information provided by defendant's sex offender treatment provider, and to assist in identifying and addressing defendant's acute and stable dynamic risk factors for re-offending. |
| 18) | **Provide the supervising U.S. Probation Officer any and all requested financial information, including copies of state and federal tax returns.** | Based on the need to monitor his ability to support himself through legitimate means, the requirement to report place of employment under SORNA, monitor the purchase of computer equipment or online services, and to assess his ability to contribute to the cost of treatment services. |
| 19) | **Defendant must allow the supervising U.S. Probation Officer to notify defendant's employers, friends, family, community organizations, and educational and volunteer agencies, where minors reside or regularly spend time, of the risks associated with defendant's criminal history involving a sex offense against a minor.** | Based on the nature of the offense of conviction that includes possession of child pornography and his admissions to continued sexual thoughts about minors and viewing child pornography on supervised release. |
| 20) | **Not work in any occupation, business or profession, or participate in any volunteer activity where defendant has access to children under the age of 18 without the prior approval of the supervising U.S. probation officer.** | Based on the nature of the offense which involves possession of child pornography and his non-compliance while on supervised release. |
| 21) | **Comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C §16901, et seq.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which defendant resides, works, is a student or was convicted of a qualifying offense.** | Based on the offense of conviction and the need to monitor defendant's compliance with local, state, and federal laws. |
| 22) | **Not own, use or have access to the services of any commercial mail-receiving agency or open or maintain a post office box without the prior approval of the supervising U.S. probation officer.** | Based on defendant's use and possession of devices used to seek and obtain child sexual abuse images, and the need to monitor all devices to which defendant uses or has access. |

11

| 23) | Participate in mental health referral, assessment, and treatment as approved by the supervising U.S. Probation Officer and comply with all rules, regulations, and recommendations of the mental health agency or its representative to the extent approved by the supervising U.S. Probation Officer. If defendant is eligible for funding from any source to cover the cost of treatment, defendant is to make reasonable efforts to obtain such funding. Participation in treatment does not require payment by defendant unless it is clear defendant can afford it. | Recommended based on defendant's history of mental health problems and psychotropic medication, as well as to address any risk factors. |
| 24) | Not possess any visual or audio recording devices. | Recommended based on defendant's instant offense and his unauthorized possession of visual or audio recording devices on supervised release. |

Defendant is to be registered with local law enforcement agencies and the state attorney general before his release from confinement. Defendant does not have the financial means or earning capacity to pay the cost of incarceration.

Entered this 13th day of February, 2023.

BY THE COURT:

WILLIAM M. CONLEY
District Judge

12

A-3

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

────────────────────────────────────────────────

UNITED STATES OF AMERICA,

        Plaintiff,

  -vs-                         Case No. 09-CR-152-WMC

JAMES ANDERSON,                Madison, Wisconsin
                                 February 13, 2023
           Defendant.          2:34 p.m.

────────────────────────────────────────────────

STENOGRAPHIC TRANSCRIPT OF JUDICIAL REVIEW
HELD BEFORE U.S. DISTRICT JUDGE WILLIAM M. CONLEY
*TRANSCRIBED FROM DIGITAL RECORDING*

APPEARANCES:

For the Plaintiff:

                Office of the United States Attorney
                BY:   MEREDITH P. DUCHEMIN
                Assistant United States Attorney
                222 West Washington Avenue, Suite 700
                Madison, Wisconsin  53703

For the Defendant:

                Federal Defender Services of Wisconsin, Inc.
                BY:   JOSEPH A. BUGNI
                      JONATHAN GREENBERG
                22 East Mifflin Street, Suite 1000
                 Madison, Wisconsin  53703

Also appearing:   JAMES ANDERSON, Defendant
                ALYSSA BRODY, U.S. Probation Officer

Jennifer L. Dobbratz, RMR, CRR, CRC
U.S. District Court Federal Reporter
United States District Court
120 North Henry Street, Rm. 410
Madison, Wisconsin  53703
(608) 261-5709

1          (Proceedings called to order at 2:34 p.m.)

2              THE CLERK:  All rise.  This Honorable Court is now in

3     session.  Judge William M. Conley presiding.  Please be seated

4     and come to order.

5          Case No. 09-CR-152-WMC, the *United States of America v.*

6     *James Anderson*.  Court is called for a judicial review.

7          May we have the appearances, please.

8              MS. DUCHEMIN:  Good afternoon, Your Honor.  On behalf

9     of the United States, Meredith Duchemin.

10             MR. BUGNI:  Good afternoon, Your Honor.  Joe Bugni and

11    Jon Greenberg appearing on behalf of Mr. Anderson.

12             THE COURT:  Good afternoon, all.

13         We are here for a hearing on the probation office's

14    petition for judicial review.  From the record, I'll make the

15    following findings of fact subject to correction by counsel:

16         The defendant was sentenced in the Western District of

17    Wisconsin on April 14th, 2010, following his conviction for

18    possession of child pornography in violation of Section

19    2252(a)(4)(B), a Class C felony, then committed to the custody

20    of the Bureau of Prisons to serve a term of imprisonment of 96

21    months with a 20-year term of supervised release to follow.

22         On October 14th of 2016, he began his first term of

23    supervised release.  On March 4th of that year -- I'm sorry.

24    That's not correct.  On March 4th, five years later -- or

25    four-and-a-half years later, 2021, that term was revoked for

violating conditions of supervised release that included not
notifying his probation officer that he owned and possessed
numerous information technology devices, accessed the internet
on various devices that were neither authorized nor monitored,
failed to provide truthful answers to the probation office's
inquiries, and not only failed to follow instructions from his
probation officer but possessed the very material for which he
was originally convicted.  The defendant also used
countermeasures to -- during a polygraph examination, leaving
the examiner unable to render an opinion on that exam.  Further,
forensic review of the defendant's unauthorized devices revealed
animated images of minors engaged in sexually explicit conduct
along with text messages of stories about minors engaged in
sexually explicit acts with adults and other minors.  For this
gross violation of supervision, the defendant was revoked and
sentenced by Judge Crabb to an additional 18 months imprisonment
to be followed by another 20-year term of supervised release.
July 15th, 2022, the defendant began that second supervised
release.

He appears to have almost immediately resumed his
noncompliant behavior and again demonstrated a complete
disregard for his conditions of supervised release by engaging
in conduct that mirrors the violations for which he was revoked
during his first term of supervised release.  Further, it is
again alleged that defendant violated the mandatory condition

against committing another federal offense by possessing obscene

visual representations of the sexual abuse of children in

violation of Section 1466A(b) of Title 18, which prohibits

possession of drawings, cartoons, sculpture, paintings, or other

materials that depict minors engaged in sexually explicit

conduct or a minor engaged in sexual intercourse that lacks

serious literary, political, or scientific value.

In this case, during an unscheduled home visit with the

defendant in August of last year, the probation office conducted

a plain-view seizure of a hard drive that defendant admitted to

recently finding in his apartment.  The defendant further

admitted to viewing the contents of the device, including what

he described as child anime.  After a further search of the

defendant's residence, another hard drive was seized.  Forensics

analysis of these two unauthorized external hard drives revealed

illustrated depictions of child exploitation.  More

specifically, on one hard drive, three series of illustrated

images depicted child exploitation.  The first depicts two

prepubescent females engaging in sexual acts with an adult male,

the second depicts two prepubescent females engaging in bondage

and sexual activity with an adult male, and the last depicts a

minor male being abducted, abused, cooked, and eaten by an adult

male, who describes his sexual arousal by abusing the minor.

On the second hard drive, multiple illustrated depictions

of child exploitation were also present, including an image of a

1    prepubescent female being penetrated by an adult penis, an image

2    of a prepubescent female being vaginally penetrated by an adult

3    male while she performs oral sex on a horse, another image of a

4    prepubescent female exclusively identified as 9 years old whose

5    legs are spread sitting in front of a partially naked adult

6    female.

7        There were also over 100,000 pornographic stories located

8    on the devices with graphic depictions of child sexual abuse.

9    Certainly those images depicting sexual exploitation of children

10    could be found to violate Section 1466A(b) of Title 18, but like

11    Judge Crabb, I am inclined not to go down this road given the

12    vagaries of defining obscenity in works of art, however

13    offensive, unless, of course, the government wishes to pursue a

14    new indictment.

15        In addition to the illustrated images depicting child

16    exploitation, however, the devices contain numerous videos,

17    images, and audio files involving adult pornography,

18    pornographic stories containing adult sexual intercourse,

19    bestiality, cannibalism, and necrophilia.  During a search of

20    the defendant's residence, printed copies of pornographic

21    stories were seized from his bedside table drawer as well.

22    These stories generally describe bestiality and minors engaging

23    in sexually explicit conduct, with many involving incestual

24    relations between minor siblings.

25        The defendant also violated Standard Condition No. 2, which

1    requires him to answer truthfully all inquiries by the probation

2    officer.  Specifically, on September 15, 2022, the defendant

3    denied having unauthorized devices or sexually explicit

4    materials of minors in his residence.  He also denied having any

5    sexual thoughts of minors on the same date that one of the hard

6    drives, the contents of which I've just described, was located

7    in his closet.  Further, at a later date, when confronted with

8    this content, the defendant admitted using it to masturbate in

9    an attempt to fall asleep, although he claimed to have been

10   unsuccessful.  On his supplemental monthly report forms in July

11   and August of 2022, the defendant also indicated he seldom had

12   any sexual thoughts or interest, specifically denied having

13   unauthorized access to the internet, only to later admit to

14   utilizing a computer at his work and at a car dealership to

15   access the internet.

16        Next, the defendant violated Special Condition No. 14,

17   which requires him to participate in sex offender counseling.

18   He did not inform his treatment adviser of his possession of the

19   unauthorized IT devices that contained illustrated child

20   exploitation images nor did he share having attempted to

21   masturbate to sexually explicit materials about minors.  Given

22   this lack of transparency, the defendant obviously was not fully

23   engaged in treatment either.

24        Finally, the defendant violated Special Condition No. 15,

25   which requires him to provide the probation office advance

notification of any IT devices, having failed to notify the
probation office of his possession of two external hard drives,
utilizing his neighbor's laptop to access and view the contents
of a hard drive, and having a Roku streaming device connected to
his television and his neighbor's Wi-Fi network.

I don't know what the argument would be against revocation,
but I'll hear it if defense counsel wishes to make it.

MR. BUGNI: No, Your Honor. We agree that revocation
is appropriate.

THE COURT: Defendant's -- given that the violations
warrant revocation, with a Grade C violation and a criminal
history category still I, defendant only has an advisory
guideline range of 3 to 9 months with the statutory maximum
being 24 months under Section 3583(e)(3) of Title 18 because the
offense of conviction is also a Class C felony, although Section
3583(h) and (k) authorize imposition of a life term of
supervised release.

The content discovered on the hard drives and printed
copies of pornographic stories is deeply concerning. It
certainly underscores the defendant's sexually deviant attitudes
and sexual preferences for minors as well as his deceit and
disinterest in meaningful sex offender treatment. Indeed, the
forensic review shows he began to engage in this behavior while
on home confinement even before his supervised release term
commenced, then continued to maintain possession of devices that

1    he was aware contained illustrated images of child sexual

2    exploitation during his supervised release term and had no

3    intent to be forthcoming with the probation officer or his

4    treatment provider until the devices were found and he was

5    confronted.

6         Even more egregious, the defendant was revoked during his

7    first term of supervised release for essentially the same

8    violations, and it's this last one that causes me to believe

9    that a sentence below what Judge Crabb imposed, which is what

10   the guidelines suggest and, indeed, below the mandatory

11   sentence, is probably not appropriate here, but I haven't

12   decided, and I am willing to hear further argument by the

13   parties, understanding that I have the United States's position

14   on the remaining contested issues and I've read the defendant's

15   response to those issues.

16        I'll hear first from the government.

17        MS. DUCHEMIN:  Your Honor, I have nothing to add beyond

18   the United States is requesting one year.

19        THE COURT:  Anything more for the defense?

20        MR. BUGNI:  Your Honor, just two small points.  First,

21   we agree that revocation is appropriate here, and we understand

22   all the reasons that there would be the desire for -- or the

23   thought that more might be necessary.  I would only point out

24   two things.

25        One, Mr. Anderson is of an age where we both expect more of

1    him but also where every year, every month is a more serious

2    violation.  It's more of a tax upon him.

3         And the second part of that, Your Honor, is I agree that --

4    I completely agree that there is not meaningful participation so

5    long as there is hiding, right?  But I also know that so much of

6    the progress of sex offender is both in, like, the opening up,

7    and that is something that I believe Mr. Anderson has at times

8    tried to take in the sex offender, though completely failed,

9    completely failed.  There is an aspect of it that he is

10   attending, and I know that the government has asked that the

11   letter that the probation office shared with us from the

12   treatment provider be part of the record.  That is something

13   more than the recalcitrance that we sometimes see with the sex

14   offenders, and here is someone who I believe that, if the Court

15   were to go with the government's recommendation or slightly

16   less, that that would be an appropriate sentence given

17   everything that you are confronted with.

18        So with that, I believe Mr. Anderson would like to address

19   the Court.

20             THE COURT:  Mr. Anderson, I'd be happy to hear anything

21   you wish to say at this point.

22             THE DEFENDANT:  Your Honor, I messed up, pure and

23   simple.  No one to blame but myself.  I failed in trying to keep

24   from failing -- falling into old habits.  I needed to continue

25   therapy and to -- with my current therapist.  I need to work on

1    distraction techniques so that I don't let myself fall into the

2    old habits.  I need to keep working at my job to support myself.

3    This is part of my support of my family and my friends and to

4    keep myself going through life.

5         I messed up, and I want to stop the cycle of relapse with

6    treatment and therapy sessions.  I have myself to blame for old

7    habits.  I live alone.  My job gives me friends, co-workers,

8    work, and income to support myself.  Please, dear Lord -- Your

9    Honor, I have learned from my mistakes this time, and I want to

10   come back to treatment and my job, if I can.  Thank you.

11        THE COURT:  I appreciate that statement, Mr. Anderson.

12   The thing that's most difficult for me is that you managed to go

13   for four-and-a-half years without a recurrence, at least that

14   was found by anyone.  This time you managed to go less than a

15   month before you started to violate and knowing the likelihood

16   of being caught.  I don't know what else to do except hold you

17   fully accountable for that, particularly since you continue to

18   create a market for this stuff by downloading it and using it.

19        Were you able to at least for some period of time after you

20   served a relatively long sentence for having this kind of

21   depictions -- art some would argue, disturbing child

22   exploitation depictions others would say -- did you manage for a

23   time not to have accumulated that?

24        THE DEFENDANT:  Yes.

25        THE COURT:  And how do you account for the fact that

1    you didn't even really make an effort this time?

2              THE DEFENDANT:  I really can't say outside of my old

3    habits.

4              THE COURT:  Which, sadly, keep bringing you before

5    federal judges, and given your conduct, you're going to be back

6    on supervision and face the same consequences next time.  This

7    is one of those where you just wish that we had a better

8    understanding of all of this than we do.  The depictions that

9    you're supporting is part of a much greater foul group of

10   individuals who are creating it, as you probably know, some

11   using live children to create the depictions.  Certainly

12   providing it to purveyors and to individuals like yourself, that

13   promotes a sexual deviancy that can be incredibly damaging to

14   children, and I don't know what else to do but to hold you

15   accountable for that by sending you back to prison, but it's a

16   waste of time and resources if you're not going to take it

17   seriously.

18        Did you find any benefit to any treatment that you received

19   this time around?

20              THE DEFENDANT:  Yes, sir, I did.

21              THE COURT:  And yet you fell right back in the same

22   pattern.  Can you put your finger on why that was?

23              THE DEFENDANT:  Mostly that it was falling back into

24   the old habits was comfortable.  It was one of those things that

25   at the time I know I shouldn't have done, but I did.

1          THE COURT:  Is there any way you can convince yourself

2     that when you do that you're making a decision to go back to

3     prison?  Because I can't imagine, even if you're in a program

4     that addresses sexual deviancy, that that's a very pleasant way

5     to spend your time.

6          THE DEFENDANT:  No, sir, I don't.

7          THE COURT:  So why was it that falling back into this

8     habit was more preferable to you than making a decision to go

9     back to prison?

10          THE DEFENDANT:  That I could not really explain, sir.

11          THE COURT:  That's the puzzle.

12     I am prepared to render sentence, unless there's anything

13     else that you want to add.

14          THE DEFENDANT:  No, sir.

15          THE COURT:  After reviewing the nonbinding policy

16     statements of Chapter 7 of the guideline manual, I am persuaded

17     that an advisory sentencing guideline range sentence is

18     inadequate to achieve the statutory purposes of sentencing upon

19     revocation with this particular defendant.  The intent of my

20     sentence is to hold the defendant accountable for his

21     violations, to protect the community and to promote specific and

22     general deterrence, and to impose a sentence reasonable and

23     consistent with those similarly situated.

24     It is ordered that the period of supervised release imposed

25     on the defendant on March 4th, 2021, is revoked.  The defendant

1    is committed to the custody of the Bureau of Prisons for a term

2    of 18 months.  The defendant is thereby remanded to the custody

3    of the U.S. Marshals to begin service of his sentence.

4         A 30-year period of supervised release shall follow.  The

5    defendant's poor adjustment to supervision so far reflects that

6    he will require future assistance transitioning back into the

7    community following his term of imprisonment and that a lengthy

8    term of supervised release with ongoing treatment is still

9    warranted to address the obvious risk and needs present in this

10   case.

11        In addition to the mandatory conditions of supervised

12   release, I do adopt and find the standard and special conditions

13   set forth in -- and justified in the probation office's petition

14   for review are reasonable and reasonably related to the offense

15   of conviction as well as the personal history of -- and

16   characteristics of this defendant.  In addition, I find that a

17   new condition 17, as proposed in the supplemental report and

18   justified there, is appropriate, which requires that the

19   defendant not possess any material containing sexually explicit

20   conduct of minors under Sections 2256 and 1466A(b) of Title 18.

21   Specifically, that the defendant not possess or view any

22   literary or visual depictions of any kind, including any

23   photograph, film, video, picture, drawing, cartoon, sculpture,

24   painting, computerized-generated image or picture, whether made

25   or produced by electronic, mechanical, or other means, of

sexually stimulating obscene material.

Is that the specific condition that wasn't set forth in the proposal?

OFFICER BRODY:  That was the condition proposed in the supplemental.

THE COURT:  Right.  So I'm just noting that for the record, but otherwise all of these have been provided for some time to the parties, and I'll hear if the defendant wishes me to also set forth all of them on the record and justify each of them individually.

MR. BUGNI:  No, Your Honor.  We would waive that, and we do not need that set forth individually.

THE COURT:  Then, finally, I'll find that the defendant is to be registered with local law enforcement agencies and the state attorney general before his release from confinement.

He does not have the financial means or earning capacity to pay the costs of incarceration.

There's really no good result here, Mr. Anderson, because you haven't been able to find a way not to fall back into your old habits.  You're right back where you started on the first violation.  It's just that you got here much faster this time.  All I can tell you is that somehow you have to convince yourself, over any other damage that you do to anyone else, that giving in to this habit is a decision by you to go back to prison, because that's what it is, and if that's truly what part

1    of your mind wants, then you're not going to change.  If you can

2    let that be an incentive, whatever else you can do in therapy --

3    and you know lying to a therapist is a pointless exercise, but

4    that's what you did when you came out and repeatedly.  If you

5    don't help yourself, no one else is going to be able to help

6    you, and brutal honesty to those who care about you would also

7    help because they can help hold you accountable.

8         I don't know what else can be said.  I'm sorry that this is

9    where we are again, and I hope you'll be able to find a

10   different path next time.

11        You do have a right to appeal this sentence.  You have been

12   ably represented by Mr. Greenberg and Mr. Bugni, and they've

13   argued for a lower sentence than I've imposed, but I couldn't

14   get myself around at least giving you what Judge Crabb gave you

15   for what was the first violation after a long period of good

16   behavior, or at least apparently good behavior.  I don't know.

17   Perhaps you had put it over on the probation office for a long

18   time, but given their efforts to try to maintain people in the

19   community, I doubt that's the case, unless they're violating the

20   very crime they've committed.

21        You have 14 days to file that, and I'm certain that you'd

22   be assisted in filing the notice of appeal, although someone

23   else may be appointed to represent you on the appeal itself.

24        Anything more for the government?

25             MS. DUCHEMIN:  Yes, Your Honor.  I understand that part

1     of the justification for Special Condition 17, the modification,

2     was also a letter written to you from Mr. Anderson's

3     treatment provider --

4           THE COURT:  His treatment provider, yes.

5           MS. DUCHEMIN:  That is not otherwise part of the

6     record.  It's a letter that actually Mr. --

7           THE COURT:  I apologize.  If the request is that -- it

8     was proposed in the supplemental 12C, which is at docket 58 --

9           MS. DUCHEMIN:  Correct.

10          THE COURT:  -- and I think it alludes to the

11    recommendation, but you think the letter itself should be made

12    part of the record?

13          MS. DUCHEMIN:  I do.  And I've asked -- I don't think

14    there's anything -- you know, his health conditions, secret

15    stuff or anything, and I've asked defense if it's okay if we

16    just docket it.

17          MR. BUGNI:  No objection, Your Honor.

18          THE COURT:  All right.  And not under seal?

19          MS. DUCHEMIN:  Correct.

20          THE COURT:  Very good.  I will direct that.

21          MR. BUGNI:  Your Honor --

22          THE COURT:  Yes.

23          MR. BUGNI:  -- one brief moment.  We spoke to

24    Mr. Anderson.  His -- we instructed him to give two weeks'

25    notice to his job two weeks ago.  His last day would be

 1    Thursday, the 16th.  The ability to be able to go back to this

 2    job is -- if he can give that two weeks' notice so he's not

 3    disappearing today, we would just ask that you would allow him

 4    to self-surrender on Friday, the 17th.  Let him finish out his

 5    last shift on the 16th and then go.  We spoke to the government

 6    earlier.  They have no objection to self-surrender.  So, Your

 7    Honor, as a matter of grace, would you allow him to

 8    self-surrender on the 17th?

 9         THE COURT:  I'm not sure it's my place to render grace,

10    but certainly to try to accommodate a future employment is

11    probably worth the effort.

12         But I'll first ask is the probation office aware of any

13    violations since he came back under supervision?  I should say

14    since he was allowed to be released on further supervision

15    pending a resolution of the petition filed by the probation

16    office.

17         OFFICER BRODY:  We are not aware of any other

18    violations (inaudible).

19         THE COURT:  Does the government have an objection to

20    him reporting on Thursday of this week -- or Friday of this --

21         MR. BUGNI:  Friday of this week.

22         MS. DUCHEMIN:  No.

23         THE COURT:  All right.  Then I will amend the order to

24    reflect that the defendant is to report -- self-report to the

25    marshal's office between 10:00 and 2:00 p.m. this coming Friday,

1    February -- 17th?

2          MR. BUGNI:  Yes, Your Honor.

3          THE COURT:  Very good.

4          MR. BUGNI:  Thank you, Your Honor.

5          THE COURT:  We are adjourned.

6      (Proceedings concluded at 3:03 p.m.)

7                    ***

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1      I, JENNIFER L. DOBBRATZ, Certified Realtime and Merit

2    Reporter in and for the State of Wisconsin, certify that the

3    foregoing is, to the best of my ability, a true and accurate

4    transcription of the digitally-recorded proceedings held on the

5    13th day of February, 2023, before the Honorable

6    William M. Conley, U.S. District Judge for the Western District

7    of Wisconsin.

8        Dated this 8th day of March, 2023.

14                              _____/s/ Jennifer L. Dobbratz_____

15                        Jennifer L. Dobbratz, RMR, CRR, CRC
                                    Federal Court Reporter

24        The foregoing certification of this transcript does not
    apply to any reproduction of the same by any means unless under

25    the direct control and/or direction of the certifying reporter.