IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

No. 23-1375

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | Appeal from the United States District Court for the Western District of Wisconsin |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) ) | Case No. 09-cr-152-wmc |
| JAMES ANDERSON, | ) | |
| | ) | Honorable William M. Conley |
| Defendant-Appellant. | ) ) | Presiding |
| | ) | |

BRIEF OF PLAINTIFF-APPELLEE

———————————————

Timothy M. O'Shea
United States Attorney
Western District of Wisconsin

Meredith P. Duchemin (lead counsel)
Assistant United States Attorney

222 W. Washington Avenue
Suite 700
Madison, WI 53703
(608) 264-5158

Attorneys for Plaintiff-Appellee

IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

No. 23-1375

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Appeal from the United States District Court for the Western District of Wisconsin |
| Plaintiff-Appellee, | ) | |
| v. | ) | Case No. 09-cr-152-wmc |
| JAMES ANDERSON, | ) | |
| Defendant-Appellant. | ) | Honorable William M. Conley Presiding |

BRIEF OF PLAINTIFF-APPELLEE

———————————

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. ii

JURISDICTIONAL STATEMENT ...................................................... 1

STATEMENT OF THE ISSUES........................................................... 2

STATEMENT OF THE CASE ............................................................. 3

SUMMARY OF ARGUMENT........................................................... 17

    I.    The District Court Did Not Procedurally Err When It Sentenced The Defendant Because The Court Adequately Explained the Chosen Sentence ............................................................................. 19

        A.    Standard of Review ...................................................... 19

        B.    Argument ...................................................................... 19

    II.    The District Court Did Not Procedurally Err Because The Court Gave Appropriate Consideration To Defendant's Argument That His Addiction And Treatment Needs Warranted A Shorter Sentence. ................................................................................. 25

        A.    Standard of Review ...................................................... 25

        B.    Argument ...................................................................... 25

CONCLUSION................................................................................... 29

i

## TABLE OF AUTHORITIES

Page(s)

Cases

*Gall v. United States,* 552 U.S. 38 (2007) ....................................................... 19, 21

*United States v. Bickart,* 825 F.3d 832 (7th Cir. 2016) .................................... 19

*United States v. Boultinghouse,* 784 F.3d 1163 (7th Cir. 2015) ..................... 19

*United States v. Carter,* 408 F.3d 852 (7th Cir. 2005) .................................... 20

*United States v. Dill,* 799 F.3d 821 (7th Cir. 2015) ........................................ 25

*United States v. Ford,* 798 F.3d 655 (7th Cir. 2015) ................................. 19, 20

*United States v. Pitre,* 504 F.3d 657 (7th Cir. 2007) ...................................... 23

*United States v. Raney,* 842 F.3d 1041 (7th Cir. 2016) ................................... 20

*United States v. Sainz,* 827 F.3d 602, 608 (7th Cir. 2016)……………………………..24

*United States v. Snyder,* 635 F.3d 956 (7th Cir. 2011) .................................... 21

*United States v. Vasquez-Abarca,* 946 F.3d 990 (7th Cir. 2020) .............. 21, 22

*United States v. Yankey,* 56 F.4th 554 (7th Cir. 2023) .............................. 25, 26

Statutes

18 U.S.C. § 1466A(b) ..........................................................................6, 11, 13

18 U.S.C. § 1466A(b)(1) ...........................................................................12

18 U.S.C. § 2252(a)(4)(B) ...........................................................................4

18 U.S.C. § 2256(8) ...................................................................................6

18 U.S.C. § 3231 .......................................................................................1

18 U.S.C. § 3553(a) ............................................................................19, 22

18 U.S.C. § 3583(e)(2) ...............................................................................1

18 U.S.C. § 3583(e)(3) ...............................................................................1

18 U.S.C. § 3583(h) ...................................................................................1

18 U.S.C. § 3583(k) ..................................................................................24

18 U.S.C. § 3742(a) ...................................................................................1

28 U.S.C. § 1291 .......................................................................................1

<u>JURISDICTIONAL STATEMENT</u>

The jurisdictional statement set forth in the appellant's brief is not complete and correct. Accordingly, pursuant to Circuit Rule 28(b), the United States submits the following jurisdictional statement.

I.    District Court Jurisdiction

A.    The district court's jurisdiction is based on Title 18, United States Code, Sections 3231, 3583(e)(2) and (3), and 3583(h).

II.    Appellate Court Jurisdiction

A.    The Appellate Court's jurisdiction is based on Title 28, United States Code, Section 1291 and 18 U.S.C. § 3742(a).

B.    The appellant's second term of supervised release was revoked on February 13, 2023. (App. 15-26). The Order on Judicial Review was entered by the district court and docketed the same day. *Id.*

C.    The appellant did not file any motion having the effect of tolling the time within which to appeal.

D.    The appellant timely filed his notice of appeal on February 27, 2023. (R. 69).

E.    This case is not an appeal from a decision of a magistrate judge.

## STATEMENT OF THE ISSUES

1.     Whether the district court adequately explained its decision to impose an eighteen-month term of imprisonment, followed by a thirty-year term of supervised release, when revoking defendant's second term of supervised release for conduct that began almost immediately while on supervision and was virtually identical to conduct that resulted in his prior eighteen-month revocation sentence.

2.     Whether the district court gave appropriate consideration to defendant's argument that his addiction and need for treatment warranted a shorter sentence.

<u>STATEMENT OF THE CASE</u>

**Criminal Case and Sentencing**

On February 13, 2023, the United States District Court for the Western District of Wisconsin revoked defendant James Anderson's supervised release for a second time. (R. 68, pp. 1-4; App. 15-18).[1] The court sentenced the defendant to eighteen months in prison, followed by a thirty-year term of supervised release. *Id.* R. 68, pp. 5-6; App. 19-20). Defendant appeals his sentence. (R. 69).

Anderson was originally brought to the attention of authorities in the fall of 2008. (R. 22 ¶¶ 12-13). Investigators discovered that a manufacturer of child pornography had regularly chatted and exchanged child pornography images with an online user known as "pervertdaddie," whom investigators subsequently identified as the defendant. *Id.* Investigators obtained search warrants for defendant's home and place of employment. *Id.* ¶¶ 15-16. At his home, they found forty-seven computer hard drives, two laptop computers, memory cards, disks, other computer equipment, web cameras, sex and bondage items, and sexually explicit cartoons. *Id.* ¶ 15. At his work site, they found a laptop, hard drives, and other electronic devices. *Id.* ¶ 16 The items found at both

---

[1] Unless otherwise noted, "R." refers to the docket entry number in defendant's Western District of Wisconsin case, 09-cr-152-wmc. "App." refers to the Required Short Appendix submitted by Defendant-Appellant with his opening brief.

locations contained images of children engaged in sexually explicit conduct with other children and with adults. *Id.* ¶ 16. The sexually explicit images of minors included images of pre-pubescent children as young as one, images and videos of pre-pubescent children being bound and sexually abused, and sexually explicit images of children that were characterized as sadistic or masochistic. *Id.* ¶¶ 25-28.

On January 7, 2010, defendant pled guilty to possessing child pornography, in violation of 18 U.S.C. § 2252 (a)(4)(B). (R. 18-19). Before sentencing, defendant underwent a psychosexual evaluation conducted by Patricia Coffey, Ph.D. (R. 32-1). In her report, Dr. Coffey diagnosed defendant with "pedophilia" and said that he had a "strong sexually deviant interest in pre-pubescent children." (R. 32-1, p. 4). Dr. Coffey nevertheless concluded that defendant was a low risk for a hands-on offense, was a good candidate for treatment, and was likely to be "very cooperative with community supervision." *Id.* at 6, 8. Dr. Coffey noted, however, that defendant's risk of reoffending without an intensive treatment intervention was "moderate to high." *Id.* Dr. Coffey's findings and diagnosis were used as the primary basis for defendant's request for a sentence of sixty-months, which was equal to half of the advisory guideline range of 120 months. (R. 32) (R. 35, p. 5). On April 15, 2010, the district

court sentenced defendant to ninety-six months in prison, to be followed by a twenty-year term of supervised release. (R. 40) (App. 01).

## Defendant's First Term of Supervised Release

On October 14, 2016, defendant was released from federal custody and began his first term of supervised release. *Id.* On January 31, 2021, the supervising probation officer submitted a revocation petition, alleging that the defendant had violated his terms of supervised release by lying to the probation officer, failing to follow instructions from the probation officer, possessing unauthorized electronic devices, possessing images of sexually explicit conduct, and failing to cooperate with a polygraph examination. (R. 43 at 1-3).

On February 24, 2021, the probation officer filed a Supplemental Petition describing the nature of the images recovered during the forensic examinations of the unauthorized electronic devices. (R. 49). The forensic analysis revealed more than 1,000 images, including animated images of minors engaged in sexually explicit conduct. *Id.* These animated images depicted prepubescent boys and girls, toddlers, and infants engaged in anal, oral, and vaginal sexual acts with adults and other minors, as well as images of the children displaying their genitals in a lascivious fashion. *Id.* The devices also contained more than 6,000 sexuality explicit text documents, many of which included stories about minors engaged in sexually explicit acts with adults and other minors. *Id.*

On March 2, 2021, the probation officer filed a Second Supplemental Petition, advising the court that although the images recovered on the electronic devices were not "child pornography" under 18 U.S.C. § 2256(8), the images could constitute obscene visual depictions of the sexual abuse of children under 18 U.S.C. § 1466A(b). (R. 50).

The district court held defendant's first judicial review hearing on March 4, 2021. (R. 52). At the hearing, the court decided to revoke defendant's supervised release and sentence him to eighteen months in prison, followed by a twenty-year term of supervised release. The custodial sentence was above the advisory guideline range of three to nine months. In the written Order on Judicial Review, the court set forth its factual findings and explained its choice of sentence. (App 01-06).

The court found that defendant violated his conditions of supervised release by possessing, without prior approval, a second cell phone, laptop computer, Amazon tablet device, Amazon Fire Stick, and multiple external hard drives, noting that the unauthorized laptop and tablet device had built-in cameras and Wi-Fi capabilities. (App. 03-04). When asked, defendant failed to provide the correct password for the devices. (App. 04). The court also noted that while initially defendant stated he was fixing the devices for a coworker, he later admitted he had lied and the devices belonged to him. *Id*.

The court further found that the defendant violated his conditions of supervised release by being untruthful with his probation officer and failing to follow her instructions. (App. 02-03). On multiple occasions, the defendant accessed his parents' computer, despite being repeatedly directed not to do so. Further, defendant was directed to return an Amazon Fire Stick he had purchased without obtaining prior approval. *Id*. He provided the probation office a receipt as proof of return; however, the probation office later observed an Amazon Fire Stick in defendant's residence. *Id*.

The court also found that defendant violated the terms of supervised release by using countermeasures during a polygraph examination, leaving the examiner unable to render an opinion on the exam. (App. 04). The court agreed that the defendant manipulated his breathing despite being told to stop, mis-answered a control question, and admitted to taking medications before the exam. *Id*.

The court expressed concern about the contents of the devices defendant possessed. Although disagreeing with the probation officer that the images recovered on the devices constituted a new crime, the court concluded that the overall content, which included defendant's internet search history, demonstrated the defendant's ongoing "sexually deviant attitudes and sexual

preference for minors, as well as his deceit and disregard for sex offender treatment." (App. 02-03).

Considering the nature of the devices, the number of them, the content on the devices, and the extent of defendant's efforts to seek and view animated images of child exploitation and child erotica, the court determined that an upward variance from the advisory guideline range was warranted. (App. 04-05). The court strongly emphasized defendant's significant level of dishonesty and manipulation during supervision, pointing out that he had " lied about his sexual thoughts and was dishonest with both the probation office and his treatment provider . . . ." (App. 05), and concluding it was "clear" that defendant was not invested in treatment and was thus in danger of reoffending:

> He uses deceit and manipulation to engage in conduct that further reinforces his deviant sexual thoughts and behaviors for his own sexual gratification. Defendant presents a significant danger to the community. The intent of this sentence is to hold defendant accountable for his repeated violations, to reflect the seriousness of the offense to protect the community, and to promote specific and general deterrence.

*Id.*

### Defendant's Second Term of Supervised Release

On July 15, 2022, defendant began serving his second term of supervised release. (R. 68, p. 2; App. 16). Before beginning his second term, he met with his supervising probation officer, reviewed the conditions of his release, and confirmed he understood those conditions. (R. 57, p. 3). On October 11, 2022, the

supervising probation officer filed a revocation petition, alleging that defendant had again violated his terms of supervised release by possessing unauthorized electronic devices. (R. 57). During an unscheduled home visit on August 31, 2022, the probation officer noticed that defendant appeared to be trying to conceal something as she walked in. *Id.* at 2-4. The officer recovered the item, which was a hard drive with a label taped to it that said "back up." When questioned, defendant admitted "there will be stuff on it." When asked if there was child pornography, he said there probably was. The hard drive was seized for forensic analysis. *Id.* In addition to the hard drive, the probation officer found an unauthorized Roku streaming device. *Id.* Anderson admitted the device was connected to his neighbor's Wi-Fi. *Id.*

The petition also alleged that during a search of defendant's home on September 15, 2022, an additional unauthorized hard drive was found in the closet, despite defendant's assurances that he had no unauthorized devices or sexually explicit materials of minors in his residence. *Id.* When it was recovered, defendant told the probation officer that it was "old," and that he did not know it was there. *Id.* at 3. The second unauthorized hard drive was seized and sent for forensic analysis. *Id.* Officers also discovered pornographic stories in defendant's bed side table. (*Id.* at 1-2). The pornographic stories contained content relating to bestiality and incest between minor-aged siblings. *Id.* After officers uncovered

the pornographic stories, defendant was questioned about them, and he admitted to trying to masturbate to the stories. *Id.* This admission was inconsistent with defendant denying having sexual thoughts of minors earlier the same day. *Id.* The admission was also inconsistent with defendant's July and August 2022 monthly reports. In these reports, defendant said he seldom had any sexual thoughts or interests. *Id.* Defendant further admitted to accessing a computer at a car dealership and using a computer at work to access his email account. (*Id.* at 3). After the search, the probation officer spoke with defendant about his non-compliance. Defendant acknowledged that he had his treatment provider and probation officer's contact information but did not know how to reach out for help and thought what he was doing was right. (*Id.* at 5). Defendant further acknowledged he "messed up." *Id.*

After a forensic analysis of the two seized hard drives was completed, the probation officer filed a supplemental petition outlining what was recovered. (R. 58). The hard drive seized on September 15, 2022, contained hundreds of pornographic stories. (*Id.* at 2-3). The content of these stories included "graphic descriptions" of bestiality, child sexual abuse, incest, necrophilia, and cannibalism. *Id.* Additionally, the drive contained illustrations of child sexual exploitation. (*Id.* at 2). One image depicted "a naked prepubescent female child being penetrated by an adult male penis. The female is stating "My daddy taught

me how so I could star in kiddie porn films." (*Id.* at 2-3). Another illustration depicted a "prepubescent female being vaginally penetrated by an adult male's erect penis while she performs oral sex on a horse's erect penis." (*Id.* at 3). The forensic analysis revealed these files were last accessed between March 1, 2006, and February 17, 2019 (during defendant's first period of supervised release). (*Id.* at 2).

The hard drive seized on August 31, 2022, contained over 100,000 pornographic stories the content of which contained "graphic descriptions" of bestiality, child sexual abuse, incest, necrophilia, and cannibalism. *Id.* Additionally, the hard drive contained three series of illustrated images depicting child exploitation. *Id.* The first series consisted of thirteen computer generated images depicting "two prepubescent females engaging in sexual acts with an adult male." *Id.* The second series of images depicted two ten-year-old girls "engaging in bondage and sexual activity with an adult male." *Id.* The third series consisted of seventeen PDF documents containing images depicting a fourteen-year-old boy "being abducted, abused, cooked, and eaten by an adult male." *Id.* Forensic analysis revealed defendant last accessed all three series on June 12, 2022, during his period of pre-release placement and before his second term of supervised release had even begun. *Id.* (R. 58 at 2). The probation office alleged, as before during the first revocation proceeding, that the images

defendant possessed qualified as obscene visual depictions of the sexual abuse of children under 18 U.S.C. § 1466A(b). (R. 58 at 3).

In anticipation of defendant's second judicial review hearing, both parties filed letters with the court, largely centering around whether the images qualified as obscene. (R. 63, 64). The government argued that the images were obscene and that defendant's possession of them, therefore, constituted a felony under 18 U.S.C. § 1466A(b)(1) and a Grade B violation of his supervised release conditions. (R. 64, p. 1).

Defendant argued that the obscenity of the images could not be proven and urged the court to focus "on the consequences of [defendant's] violation," rather than on whether the images were obscene. (R. 63, p. 1-3). Defense counsel urged the court to find only a Grade C violation, pointing to the previous revocation order where the court had considered similar material and declined to find a Grade B violation. (*Id*. at 3). The defense concluded by asserting that the defendant struggled with "addiction to deviant pornography" and that he had "again relapsed, as many addicts do," *Id.* at 3, encouraging the court when sentencing him to consider his addiction, in addition to his regular attendance at treatment sessions, his "amenability to treatment," his consistent employment since he was released, his support system, and "his successful efforts in rebuilding his life." (*Id.* at 4). Agreeing that he had violated his conditions of

supervised release and abused the court's trust, defendant conceded that revocation was warranted but asked for a sentence at the low end of the advisory guideline range, maintaining that "stringent and targeted conditions of supervision and treatment will accomplish more good than a long term in prison." *Id.*

The district court held defendant's second judicial review hearing on February 13, 2023. (App. 27). At the beginning of the hearing, the court recounted the details of defendant's violations as well as the details of the images that were found on his seized devices. (App. 27-35). Noting that the conduct "mirror[ed]" the violations for which he was revoked the first time, the court stated that the defendant "appears to have almost immediately resumed his noncompliant behavior." (App. 29).

The court next reviewed the appropriate guideline range. As it did during the first revocation proceeding, the court said it was "disinclined" to find that the images defendant possessed were "obscene" under 18 U.S.C. § 1466A(b), (App. 31), noting that as Grade C violations, with defendant's criminal history still a category I, his advisory guideline range was three to nine months and his statutory maximum was 24 months. (App. 33).

The court explained, however, that the content found on the defendant's seized devices was "deeply concerning," and that it demonstrated his "sexually

13

deviant attitudes," and his "sexual preferences for minors." *Id.* The court twice addressed defendant's "disinterest in meaningful sex offender treatment" as a point of concern. *Id.* The court commented that given his lack of transparency with his treatment provider, defendant "obviously was not fully engaged in treatment . . . ." (App. 18, 32). The court similarly found it alarming that defendant had exhibited no intention of "be[ing] forthcoming with the probation officer or his treatment providers until the devices were found and he was confronted." (App. 34). The court noted the similarity between the current and previous violations, commenting that a sentence below the previous sentence or even below the 24-month maximum "is probably not appropriate," but made clear that it had not yet decided on a particular sentence. *Id.* The court also confirmed it had read the parties' positions on the contested issues. *Id.*

The court then heard arguments from the parties. (App. 34-35). The government asked for a one-year prison term. (App. 34). Stating he had "just two small points" to make, defense counsel acknowledged that defendant had not been meaningfully participating in his sex offender treatment. *Id.* (stating "there is no meaningful participation so long as there is hiding."). However, counsel urged the court to consider defendant's regular attendance at his treatment sessions, proposing that "the government's recommendation or slightly less . . .

would be an appropriate sentence given everything that [the court was] confronted with." (App. 35).

Lastly, the court heard from the defendant, who stated that he had "fallen into old habits" and wanted to continue with therapy and work so he could do better. (App. 35-36). The court emphasized that, despite treatment, defendant had seemingly regressed, observing that while previously he had apparently gone four-and-a-half- years without a recurrence, this time he had managed to go less than a month. (App. 36). Defendant responded that while he benefitted from attending sex offender treatment, "falling back into the old habits was comfortable." (App. 37). Despite the court's questions, he could offer no other explanation for his conduct. (App. 38).

After expressing concerns with the severity and nature of the violations, hearing defense counsel's mitigating arguments, and hearing defendant's own statements regarding his offense and treatment, the court found that the advisory guideline range was "inadequate to achieve the statutory purposes of sentencing." (App. 38). The court instead sentenced defendant to eighteen months in prison, to be followed by a thirty-year period of supervised release to hold him accountable for his violations, protect the community, promote specific and general deterrence, and impose a reasonable sentence consistent with those similarly situated. (App. 38-39). The court noted that the lengthy term of

supervised release with treatment was warranted "to address the obvious risk and needs present in this case," given defendant's poor performance to date on supervision. (App. 39).

The district court's written order was entered on February 13, 2023, and docketed the same day. (App. 15-26). This timely appeal followed. (R. 69).

<u>SUMMARY OF ARGUMENT</u>

No procedural error occurred below and this Court should uphold Anderson's revocation sentence as substantively reasonable.

The district court adequately explained its decision to impose an eighteen-month term of imprisonment and thirty-year period of supervised release when revoking defendant's second term of supervised release. The court found that defendant's violations demonstrated an ongoing sexual attraction to children and mirrored those from his previous revocation. The court explained that defendant lied to his treatment provider and thus failed to meaningfully participate in helping himself get better. The court also stressed defendant's regression when explaining the sentence, stating that defendant's repeated violations had placed him right back where he started; only he'd gotten there much faster this time. The court further explained that defendant's previous failures to adjust to supervision based on the same behavior warranted a lengthy term of supervised release and treatment.  The district court's statements, reflecting that it had considered the appropriate sentencing factors in exercising its discretion, are a sufficient basis for affirming the sentence.

The district court also gave appropriate consideration to defendant's argument that his addiction and treatment needs warranted a shorter sentence. The record shows that the court at least implicitly considered but rejected the

argument, finding instead that defendant's lies, lack of transparency, and repeated violations of supervised release demonstrated that he had no real interest in meaningful sex offender treatment to address his addiction. These findings make clear why the district court rejected the argument. The court was not required to say more, and no procedural error warrants a remand for resentencing.

## ARGUMENT

**I.    The District Court Did Not Procedurally Err When It Sentenced The Defendant Because The Court Adequately Explained the Chosen Sentence.**

### A. Standard of Review

This Court reviews de novo whether the district court adequately explained its chosen sentence so as to permit appellate review. *See United States v. Bickart*, 825 F.3d 832, 839 (7th Cir. 2016). The Court's review of a sentence imposed in a revocation proceeding is "highly deferential" and the sentence will be sustained so long as it is not "plainly unreasonable." *United States v. Boultinghouse*, 784 F.3d 1163, 1177 (7th Cir. 2015).

### B.  Argument

To adequately explain a chosen sentence and avoid procedural error, a district court need only "say something" that demonstrates it has considered the United States Sentencing Guidelines' policy statements and the relevant 18 U.S.C. § 3553(a) sentencing factors. *See United States v. Ford*, 798 F.3d 655, 663 (7th Cir. 2015); *Gall v. United States*, 552 U.S. 38, 51 (2007). The sentencing factors relevant to revocation include:

> (1) the nature and circumstances of the offense; (2) the defendant's history and characteristics; (3) the need of the sentence to deter future crime, protect the public, and provide the criminal with necessary services such as education and medical treatment; (4) Sentencing Commission

recommendations regarding the sentencing range; (5)
Sentencing Commission policy; and (6) sentence consistency
for similar violations.

*See United States v. Carter*, 408 F.3d 852, 854 (7th Cir. 2005).

While the district court must consider all relevant sentencing factors, the

court is not required to address each sentencing factor "one by one." *Ford*, 798

F.3d at 663-64. Nor must a district court "make specific factual findings on each

sentencing factor." *United States v. Raney*, 842 F.3d 1041, 1042 (7th Cir. 2016).

Here, the overall record reveals that the district court sufficiently

considered the sentencing factors and adequately explained its choice of

sentence, which included eighteen months in prison followed by thirty years of

supervised release. The court considered the nature and seriousness of the

current violations, the fact that defendant had been revoked previously for

almost identical conduct, the fact that defendant remained undeterred by the

prior revocation sentence of eighteen months in prison and twenty years of

supervised release, the fact that he began violating his supervised release terms

this time even before he was released, his failure to meaningfully participate in

treatment, his ongoing deception with probation and treatment providers, and

his continued deviant sexual interest in children. (App. 15-19; App. 38-41).

Defendant argues that the court failed to explain how defendant's sentence

compared to similarly situated defendants. (Def. Opening Brief, p. 9). However,

this Court has advised that when a district court correctly calculates a Guidelines' sentencing range, this serves as evidence of that court's consideration of the need to avoid unwarranted disparities in sentencing. *See United States v. Snyder*, 635 F.3d 956, 961-62 (7th Cir. 2011); *see also Gall*, 552 U.S. at 54 (stating "Since the district judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities.").

Additionally, the court's desire to be consistent with the prior 18-month revocation sentence shows the court wanted to avoid an unwarranted disparity in sentences between two revocation proceedings involving almost identical violations. And while the court acknowledged its concern about imposing a sentence less than the previous one, in light of all its other statements, the court's concern was not, as Anderson contends, an assumption that the "first revocation sentence *had* to serve as the baseline for the current sentence." (Def. Opening Brief, p. 11).

Defendant also faults the court for failing to expressly explain why it again varied upward from the advisory guideline range. When a district court finds that an outside-the-guidelines sentence is appropriate it "must consider the extent of the deviation" and ensure that the reasons for imposing such a sentence are "sufficiently compelling." *United States v. Vasquez-Abarca*, 946 F.3d 990, 994

(7th Cir. 2020). However, a district court is not required to frame its explanation in terms of its deviation from the guidelines. *Id.* Instead, the court may explain the chosen sentence in terms of the relevant 18 U.S.C. § 3553(a) sentencing factors. *Id.*

For example, in *Vasquez-Abarca*, when selecting a sentence outside the Sentencing Guidelines' suggested range, the district court explained its chosen sentence by reviewing the defendant's extensive criminal history and previous sentences for the same offenses, and noting the danger his behavior posed to the community. *Id.* at 994-95. This Court subsequently found that by reviewing the defendant's criminal history, the district court had demonstrated its consideration of the history and characteristics of the defendant, *Id.* at 994, and that by focusing on the defendant's previous sentences for the same offenses, the district court had considered the need to deter similar criminal behavior. *Id.* at 995. Finally, this Court found that by noting the danger that the defendant's behavior posed to the community, the district court had considered the need to protect the public from further criminal activity. *Id.* Thus, this Court concluded that the district court had adequately explained its chosen sentence. *Id.*

The same is true here. After hearing the arguments of the parties and hearing from the defendant, the district court plainly said that it believed "an advisory sentencing guideline range sentence was inadequate" and that a

"variance above the advisory sentencing guideline range" [was] reasonable and no greater than necessary to achieve the statutory purposes of sentencing upon revocation." (App. 38, App. 5). The rationale for this decision is unmistakably evident throughout the record. The court specifically pointed to the "deeply concerning" content of the hard drives and printed material defendant had; his deceit and lack of interest in engaging in meaningful sex-offender treatment; and repeating essentially the same behavior as before, even while on home confinement and throughout his current term of supervised release. (App. 19; App. 33). The court unambiguously expressed its continued and legitimate concerns about defendant's poor behavior on supervised release, notwithstanding his access to treatment, (App. 16, 18, 40-41), emphasizing that the defendant was again back before the court, obviously undeterred, despite the prior eighteen-month revocation sentence. (App. 16, 19, 34). The court also expressed frustration that defendant seemed to have put less effort into complying with supervised release this term than he did during his first term. (App. 36) ("This time you managed to go less than a month before you started to violate and knowing the likelihood of being caught.").

All of these statements demonstrate that the court considered the appropriate sentencing factors in exercising its discretion to vary upward from the recommended range to a sentence of 18 months. *Cf. United States v. Pitre*, 504

F.3d 657, 664 (7th Cir. 2007) (affirming a revocation sentence above the recommended guideline range, while noting that the focus of the reviewing court is not on the detail of the district court's reasons, but on whether its statements on the record reflect appropriate consideration of the sentencing factors).

The same considerations that justified the 18-month prison term also justified the 30-year term of supervised release. Under 18 U.S.C. § 3583(k), Anderson is subject to any supervised-release "term of years not less than 5, or life." Two previously imposed 20-year terms had not deterred him from reoffending. When pronouncing the new 30-year term of supervised release, the court explained that defendant's "poor adjustment to supervision so far reflects that he will require future assistance transitioning back into the community following his term of imprisonment, and that a lengthy term of supervised release with ongoing treatment is warranted to address the risks and needs present in this case." (App. 20; *cf*. App. 39, using nearly identical language and noting that the risk was "obvious"). This explanation, in light of the factual record and the court's previous remarks, sufficiently justified the 30-year term. The judge was not required to repeat himself. *See United States v. Sainz*, 827 F.3d 602, 608 (7th Cir. 2016).

Despite defendant's arguments to the contrary, the district court adequately explained its choice of sentence and did not procedurally err. Nor is the sentence imposed plainly unreasonable.

## II.    The District Court Did Not Procedurally Err Because The Court Gave Appropriate Consideration To Defendant's Argument That His Addiction And Treatment Needs Warranted A Shorter Sentence.

### A. Standard of Review

The court reviews de novo whether the lower court sufficiently considered the defense's mitigating arguments. *United States v. Yankey*, 56 F.4th 554, 557 (7th Cir. 2023).

### B.  Argument

A district court is not required to explicitly address a defendant's mitigating arguments during a revocation hearing. *Yankey*, 56 F.4th at 557-58. Rather, a district court must give the defendant an opportunity to make a statement and present any mitigating information. *Id.* Comments and questions that reflect the judge "implicitly acknowledged" the defendant's mitigating arguments sufficiently show the court considered those arguments. *Id.* at 558. Additionally, the sentencing judge must "approach the hearing with an open

mind and consider the evidence and arguments presented before imposing punishment." *Id.* (quoting *United States v. Dill*, 799 F.3d 821, 825 (7th Cir. 2015)).

For example, in *United States v. Yankey*, the defendant argued for treatment rather than imprisonment. *Id.* at 557. After the defendant was sentenced to twenty-four months imprisonment, he appealed and argued that the judge had not adequately considered his mitigating arguments regarding his sobriety and need for treatment. *Id.* However, the record showed that the judge had read the defendant's submissions, heard arguments regarding the "positive aspects" of the defendant's supervised release, and asked the defendant about his treatment history. *Id.* at 558-59. Thus, this Court found the district court had implicitly acknowledged the defendant's mitigating arguments and therefore sufficiently considered those arguments when sentencing him. *Id.*

Anderson claims that the court misunderstood and ignored his primary mitigating argument – that he had an addiction that warranted treatment instead of a long prison term. (Def. Opening Brief, pp. 14-16). A review of the record shows, however, that treatment for defendant's addiction was actually a central focus of the revocation hearing. Before the hearing, defense counsel submitted a letter contending in part that Anderson was amenable to treatment and that supervision was a more suitable tool than prison to address his conduct. (R. 63, p. 4). At sentencing, however, defense counsel conceded that Anderson was not

meaningfully participating in treatment, because he was hiding things, and that he had "completely failed" in making progress, while pointing out that Anderson was still attending treatment sessions and was at least not recalcitrant. (App. 35).

When Anderson himself told the court that he keeps falling into "old habits" and wanted to "stop the cycle of relapse with treatment and therapy sessions," the court responded that it appreciated his statement but was still left with a person who had violated his conditions only one month into his second term of supervised release (App. 36), and that despite treatment, he had obviously fallen back into the same pattern. (App. 37). The defendant acknowledged that he hadn't really made an effort this time to avoid a relapse – behavior that he could attribute only to his "old habits." *Id.*

Despite defendant's stated desire for treatment, the court reasonably found that defendant's deceit and lack of transparency with his treatment providers demonstrated that he was not interested in meaningful sex offender treatment. It is true that the court did not explicitly say that it had considered, but rejected, the argument that defendant has an addiction, and his treatment needs warrant a lesser sentence. However, the court was not required to explicitly reject the mitigation argument, and here the court's statements make clear it at least implicitly considered the argument. Specifically, the court's statements show that

27

it understood defendant had uncontrolled urges to view sexually explicit images of children but rejected the argument that his need for treatment or stated desire for treatment, coupled with his current attendance at treatment sessions, meant he should get a lower sentence. Because defendant didn't have a genuine interest in his current treatment, admitting that he fell back into his old habits despite treatment, the court did not strongly consider – and did not need to explicitly address - his ability to continue participating in that treatment when fashioning a sentence. Contrary to defendant's contentions, the record shows that the district court both understood defendant's mitigation argument and gave it open-minded consideration, as demonstrated in part by its colloquy with Anderson earnestly attempting to understand the circumstances behind his most recent relapse. There was no procedural error requiring a remand for resentencing.

<u>CONCLUSION</u>

For the foregoing reasons, the government respectfully requests that the

district court's revocation order be affirmed.

Dated this 5th day of July 2023.

Respectfully submitted,

TIMOTHY M. O'SHEA
United States Attorney

By:  /s/_____
MEREDITH P. DUCHEMIN
Assistant United States Attorney